**STATE of Missouri, Respondent,**

**v.**

**Alphonse Vincent CASTALDI, Appellant**

**No. 50767.**

Supreme Court of Missouri,

Division No. 1.

Feb. 8, 1965.

Thomas F. Eagleton, Atty. Gen., Thomas J. Downey, Asst. Atty. Gen., Jefferson City, for respondent.

O'Hanlon & Daly, Robert J. O'Hanlon, Richard L. Daly, St. Louis, for appellant.

HOUSER, Commissioner.

Alphonse Vincent Castaldi and Clinton Edward Hawkins were jointly charged with, jointly tried, and each was convicted of tampering with a motor vehicle. This is an appeal by defendant Castaldi from the judgment sentencing him to 3 years' imprisonment in the penitentiary.

The vital question on this appeal is whether the state's evidence was sufficient to make a case for the jury.

A fire in the woods a quarter or half mile from Camp Sunnen, a Boy Scout camp in Washington County, was called to the attention of the director of the camp, Clayton Breihan. Investigating, Breihan walked along a fire trail in the direction of the smoke. In the woods he came upon a fairly new Ford automobile, sitting or parked on the fire trail, with its front and rear windows out. Proceeding through the woods he observed and recognized Edward Hawkins walking on the trail, in the direction away from and some 50 to 75 feet distant from the fire, which was near Hawkins' cabin. Looking through the dense underbrush and trees he "could just make out" two other men who were close to and within a few feet of the fire. Suspicious, Breihan returned to the camp and called a deputy sheriff. Fifteen to twenty minutes later, returning to the place in the company of the deputy, they found Hawkins, Castaldi, and one Pinson. They observed the remains of a new 1963 Ford automobile body which had been cut to pieces and from which the parts apparently had been removed. It was smoking. There was no blaze then but the body had been burning. Only the top and a portion of the body remained. Near the smoking body—within 5–7 feet—there was an acetylene torch equipped with a set of hoses and tanks. Hawkins and Castaldi were standing "fairly close by" the smoking body, in "very close proximity"—within 10 feet, perhaps three or four feet from it.

Pinson was kneeling down or crouching, cutting the smoking body with the acetylene torch. The deputy asked Hawkins what he was doing. Hawkins answered that he was cutting up, getting rid of the parts of, a junker or wreck. Breihan testified that Hawkins said "something to the effect that they were cutting up a junker or a wreck, * * *." Castaldi was "just standing there." The deputy did not speak to Castaldi and had no conversation with him. There is no evidence that Castaldi said or did anything except stand there. After 3–5 minutes the deputy and Breihan drove on to the location of the other car Breihan had seen on his first trip into the woods. Several seconds after the deputy disappeared into the woods Pinson said he was leaving. Castaldi asked him where he was going and he said that he was going into Rolla. Castaldi rode along with him. Hawkins said he was going to stay and "find out what's going on." Castaldi was later arrested on the highway.

Several days before the day in question Hawkins asked one Gibson, an employee of Western Auto Store at Potosi in the same county, for the loan of a cutting torch. Hawkins was accompanied by a man whom Gibson could not identify as Castaldi. Gibson did not lend Hawkins a torch. Shortly before the day in question Bohannon sold a large oxygen tank and a small acetylene tank to a man who gave his name as Edward Hawkins. This man was accompanied by two men whom Bohannon could not identify.

The Ford that was destroyed was identified as the property of a car dealer whose place of business was located in St. Louis. The Ford was supposed to be on his new car lot there. The car dealer had given no one permission to remove it from the lot or to dismantle and cut it up.

Castaldi, previously convicted of receiving stolen property testified that he had known Hawkins three years; that he had not previously known Pinson; that he, Pinson and Hawkins had driven in Pinson's automobile from St. Louis on July 3 to Hawkins' cabin to spend the weekend fishing; that when they approached the cabin site they saw the smoke and thought the cabin was on fire; that they found the automobile burning and made efforts to put out the fire by throwing a barrel of water and some dirt on it; that they had put out the fire when the deputy and another man arrived but that it was still smoking. Castaldi denied that he had dismantled, cut or otherwise tampered with the automobile, and explained that he left in Pinson's automobile because he "had no way of going anywhere."

A patrolman who inspected the automobile minutely found no evidence of any quantities of dirt or water around or on the automobile. The deputy sheriff saw no dirt, trash or anything of the kind upon it.

The state urges that, considered in the light most favorable to the state, State v. Townsend, Mo.Sup., 327 S.W.2d 886, the evidence is sufficient to sustain a verdict finding Castaldi guilty of tampering with a motor vehicle. The state points to the direct evidence of tampering and that parts of the automobile were disassembled and removed and that it was cut up by the use of a torch without the owner's permission; that Pinson was actually using a cutting torch on the car in the presence of Hawkins and Castaldi; that Hawkins said they were cutting up a junker; that Castaldi admitted going on a joint enterprise with Hawkins and Pinson to Hawkins' cabin; Castaldi's presence and close proximity to the actual tampering by Pinson; the "obvious lie" that the three had tried to put out the fire with water and dirt, and Castaldi's "fleeing the scene, without explanation," with the active participant, Pinson. It is said that these circumstances provide a reasonable basis for a conclusion that Castaldi participated in the tampering and are irreconcilable with Castaldi's innocence.

We are not so persuaded. Castaldi was not shown to have been implicated in the unauthorized taking of the automobile from

the dealer's lot in St. Louis. His name was not mentioned in connection with the assembling of the oxygen tanks, hoses and acetylene torch. In fact, neither Gibson nor Bohannon, when questioned about it, could identify Castaldi as the man, or as one of the men, who accompanied Hawkins when Hawkins approached them seeking a torch and oxygen tanks. Castaldi was not shown to have been interested in or connected with the property on which Hawkins' cabin was located, or to have had knowledge of or to have participated in the operation of disassembling and cutting up stolen automobiles. Although he was in the company of those who were so implicated and was physically present and in close proximity while Pinson was using the torch, and notwithstanding he left with Pinson when the officer of the law extended his search beyond the immediate scene of the fire, the most that can be said is that the state proved Castaldi's presence at the scene of the crime, an opportunity to commit the crime, suspicious circumstances, and perhaps flight.

■■ Evidence that an accused had an opportunity to commit a crime, or which merely raises a suspicion and gives rise to conjecture, is insufficient as the basis for a judgment of conviction. Presence of the accused at the commission of a felony is evidence to be considered in determining whether he was guilty of aiding and abetting, but in order to aid and abet another in the commission of a crime something more than mere presence must be shown. The mere presence of Castaldi at the scene of the tampering by Pinson, or by Pinson and Hawkins, is insufficient to render Castaldi a participant.[1] It is necessary that the accused "associate himself with the venture" in some fashion, Mays v. United States, 8 Cir., 261 F.2d 662; that some form of affirmative participation be shown, State v. Butler, Mo.Sup., 310 S.W.2d 952, 957,—participation in the crime as something that

he wished to bring about; that he sought by his action to make it succeed, United States v. Peoni, 2 Cir., 100 F.2d 401, 402; that he "consciously shared" in the criminal act. Nye & Nissen v. United States, 336 U.S. 613, 620, 69 S.Ct. 766, 770, 93 L.Ed. 919. In every case we have examined holding one guilty as an aider and abettor there has been some evidence of an act or deed or circumstance other than mere presence at the scene. There is nothing here from which it can be inferred that Castaldi encouraged or excited the commission of the offense, or participated therein, before or during the occasion when the deputy arrived, by words, gestures, looks, signs, or that he otherwise countenanced, approved or associated himself with this criminal activity, or even that he knew that a crime was being or had been committed. He was "just standing there," not as a participant, not as a lookout, but merely as a bystander.

■■ Flight is a circumstance to be considered against an accused in connection with other evidence of the commission of a crime. State v. Thompson, Mo.Sup., 363 S.W.2d 711, 715. Castaldi's "flight," however, if indeed his leaving under the circumstances may be considered a flight, is of itself insufficient to support a conviction, especially in view of the fact that he had a reasonable explanation consistent with a hypothesis other than that of consciousness of guilt. 23 C.J.S. Criminal Law § 907, p. 558. Pinson's automobile was Castaldi's only readily available means of getting out of the woods and back to St. Louis, and when Pinson indicated his intention to leave in his car it would be reasonable for Castaldi to accompany him.

■■ It was the burden of the state to prove Castaldi guilty beyond a reasonable doubt. The evidence offered to sustain this burden was sufficient to show that a crime was committed and sufficient to raise suspicions as to Castaldi's complicity, but insufficient to show that Castaldi tampered

1. These rules were reannounced lately in State v. Ramsey, Mo.Sup., 368 S.W.2d 413, 416, 417.

with this automobile or affirmatively participated in the crime. It did not show a set of circumstances inconsistent with his innocence nor did it exclude every reasonable hypothesis of his innocence. No fact issue was made. The judgment should be reversed and the defendant discharged.

It is so ordered.

WELBORN and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.