STATE of Missouri, Respondent,

v.

John Randall SIMMONS, Appellant.

No. 57062.

Supreme Court of Missouri, Division No. 2.

May 14, 1973.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Robert A. Hampe, St. Louis, for appellant.

TIMOTHY D. O'LEARY, Special Judge.

Defendant waived a jury and was tried by the court and found guilty of the crimes of Burglary Second Degree and Stealing in connection with the burglary and was sentenced by the court to five years on each charge with the punishment running concurrently.

In a single point the appellant asserts generally three grounds of error and those are: that the court erred in denying appellant's motion for judgment of acquittal; that the court erred in denying appellant's motion for new trial and that the judgment is against the weight of the evidence.

It would serve no useful purpose to recite our rules relative to the preservation of error in the motion for new trial and in the points relied on in the brief and the defendant's failures in these respects. Suffice it to say that we consider this single point as having raised the sole issue that the trial court erred in refusing to sustain defendant's motion for a judgment of acquittal at the close of all the evidence on the theory that the evidence was insufficient to make a submissible case.

In reviewing a contention that the state failed to prove essential elements of a charged offense, all evidence tending to support the judgment is considered as true and all inferences favorable to the judgment are indulged. State v. Harris, 452 S.W.2d 577 (Mo.1970).

The weight of the evidence in either a court or a jury tried case is not reviewable by an appellate court. State v. Talbert, 454 S.W.2d 1 (Mo.1970).

With these principles in mind we set forth the evidence.

The building burglarized was a combination snack bar and gift shop located on a barge that was moored on the St. Louis Riverfront and was connected to the shore by two gangplanks approximately sixty

feet long. This snack bar and gift shop were operated in conjunction with a World War II United States Navy minesweeper called The Inaugural, which was being used as a museum with an admittance charge. The minesweeper was anchored and attached to the barge and was on the river side of the barge. The barge was being used as a dock and contained only the one building mentioned. The customer windows for the snack bar and gift shop faced the river and the minesweeper. There was one deck on the barge and four decks on the minesweeper.

The two gangplanks or ramps are the only two means of access from the shore to the barge and minesweeper.

Approximately one-half way from the shore to the barge, or 30 feet, there was a locked gate with fences extending on either side of it beyond the width of the gangplank and with barbed wire on the sides and at the top of the eight to ten foot gate.

The evidence was that at 9:00 p. m. the barge and shop were secure with the windows to the snack and gift shop closed and the gates on both gangplanks locked.

Two police officers were advised of prowlers on The Inaugural and arrived at the scene around 6:10 a. m. when it was just breaking daylight.

When they arrived they observed two men at the fenced-off gate on the gangplank. One was on the barge side of the fence and the other was on the shore side of the fence. The man on the barge side of the fence was handing some items to the man on the shore side of the fence. These items consisted of an adding machine and numerous souvenir articles such as hats, ashtrays and the like, all of which were later identified as property from the snack bar and gift shop.

Immediately after noticing the two men on the gangplank the officers observed defendant standing on the first deck of the minesweeper to their left of the snack bar facing the gangplank where the officers and the other two males were located. When the officers yelled at the defendant to come off the boat the defendant turned around, ran and climbed up and inside the boat and concealed himself. The officers pursued the defendant and arrested him. There was no evidence that defendant had any of the stolen items in his possession.

The screen and window of the snack bar had been forced open. The defendant was the only witness for the defense and he testified that he and his two friends had been drinking that evening and decided to go on board the minesweeper. That they climbed over the fence that was across the gangplank and went into the barge and boat. Defendant denied being involved in the burglary and stealing contending that he was not aware of his two companions' activities.

■ It is evident that the crimes of Burglary Second Degree and Stealing in connection with the burglary had been committed by at least two persons. The question for us to consider is whether the evidence permits a fair inference of defendant's participation, or of his aiding, abetting or encouraging the crimes, for any of which defendant could properly be found guilty. State v. Ramsey, 368 S.W.2d 413 (Mo.1968).

The particular evidence here which may be considered links in the chain of circumstantial evidence showing guilt includes:

Defendant's companionship with the actual participants in the crime; defendant's preconcert of action with the participants in joining them in climbing over the fenced area and trespassing on the boat; defendant's wrongful and unjustified presence on the boat and barge with the participants; defendant's position on the boat when discovered facing the police and in an area where he could see the forced open window and screen and his companions passing property over the fence; defendant's flight upon being discovered, and his

subsequent concealment of himself on the boat.

■ While something more than mere presence at the scene must be shown to support a conviction and while flight is, of itself, insufficient to support a conviction, State v. Castaldi, 386 S.W.2d 392 (Mo. 1965), each of these circumstances may be considered as evidence of guilt by the trier of facts.

In considering the circumstance of "mere presence" and its sufficiency to support a conviction the writer in 22 C.J.S. Criminal Law § 88(2) states: "If, however, from the facts and circumstances surrounding one's presence at the time, and from his conduct, it appears that his presence did in fact encourage someone else to commit the act, guilt may be inferred; and when the bystander is a friend of the perpetrator and knows that his presence will be regarded by the perpetrator as an encouragement and protection, presence alone may be regarded as an encouragement, and, in contemplation of law, aiding and abetting * * *

"The presence of one at the commission of a felony by another is evidence to be considered in determining whether or not he was guilty of aiding and abetting; and it has also been held that presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred." Citing State v. Corbin, 186 S.W.2d 469, 471 (Mo.1945).

■ One's "presence" may have substantially different meanings and raise wholly different inferences under differing circumstances.

■ Each case must stand upon its own facts. The presence here under these circumstances constitutes something more than "mere" presence for the reason that defendant was a trespasser, having wrongfully climbed over a ten-foot fence with barbed wire and wrongfully remained on the premises. When this is coupled with the fact that defendant acted in concert with the two actual participants in the crime in entering the premises, the fact that these participants were his friends and companions, the fact that he was in the area of the building that was broken into with the evidence of the breaking in his view, and the fact that his companions were hard at the perpetration of the crime while he was overlooking the area, raises wholly different inferences than the cases involving a "mere" presence.

When we consider those facts along with the unexplained flight which we have held is evidence that the trier of fact may consider as evincing a consciousness of guilt, State v. Kilgore, 447 S.W.2d 544 (Mo. 1969), plus the circumstances of his subsequent concealment, we are of the opinion that these circumstances raise a fair and reasonable inference of concerted action which involved defendant either as an actual participant or as an aider in the crimes. This inference was sufficient to permit reasonable minds to believe the defendant guilty beyond a reasonable doubt and thus to make a submissible fact issue.

Appellate opinions sustaining conviction on like circumstantial evidence include State v. Burnley, 480 S.W.2d 881 (Mo. 1972); State v. Huff, 454 S.W.2d 920 (Mo.1970); State v. Giden, 369 S.W.2d 212 (Mo.1963); State v. Burton, 357 S.W.2d 927 (Mo.1962), and State v. Ramsey, supra.

Judgment affirmed.

All of the Judges concur.