STATE of Missouri, Plaintiff-Respondent,

v.

Vernell S. BURKS, Defendant-Appellant.

No. 36122.

Missouri Court of Appeals,
St. Louis District,
Division Three.

March 11, 1975.

Charles D. Kitchin, Public Defender, Richard A. Knutson, James C. Jones, Asst. Public Defenders, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Neil MacFarlane, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Gary W. Brandt, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

SIMEONE, Presiding Judge.

Defendant-appellant, Vernell Stanley Burks was charged, tried, found guilty by a jury and sentenced by the court under the habitual criminal act to four years in the department of corrections for the offense of attempted burglary. §§ 556.150, 560.070, 560.095. He appeals. For reasons hereinafter stated, we affirm.

Since appellant-Burks questions the sufficiency of the evidence, we will state the facts in the light most favorable to the state.

A jury could reasonably find the following facts. At about 2:00 a. m. on Sunday morning, July 15, 1973, Mr. Robert Riggins, owner of the M and L Package Liquor Store located at 2520 North Grand Avenue in the City of St. Louis, closed the store for a week's vacation. Before leaving the store, he "checked everything. We made sure that the building was secured, all the doors was [sic] locked, everything was in place, and we turned the alarm on on the door." The liquor store contained liquor, groceries, drugs, novelties and "different things." At that time, the exterior of the building did not contain any break or "hole" in the outside north wall. Elizabeth Harris was employed at the store. She left the store the evening earlier at

about 5:30 p. m., and there was no "hole" or break in the wall. The liquor store, located on the corner of Grand and Montgomery, faces east on Grand Avenue, which runs north and south, and is located next to a vacant house The vacant house is north of the liquor store. There is a "gangway" between the two buildings, an alley to the rear of the buildings and a "chain fence" enclosing the rear of the property.

At about 1:15 a. m. early the following Tuesday, July 17, 1973, Officers John Podolak and his partner, William Priest, cruising in their patrol car some two blocks away from the liquor store, received a "radio assignment to the northeast corner of Grand and Montgomery for a burglar attempting to enter the building through a hole in the wall." The officers drove toward the store and went to the alley located east and to the rear of the liquor store and the vacant building. Officer Podolak got out of the vehicle and walked along the side of the liquor store about fifty to seventy-five feet from the east wall. When he reached the north wall of the liquor store, he saw three males run "from between the gangway of the north wall of that [liquor] building" and the building next to it. They started to run toward the alley, but "made a U turn, [and] went into the vacant house." Mercury vapor lights were in the rear of the store. At about the same time, the officer saw a "hole" in the north wall and saw a light "coming out of the hole in the wall." The officer described the three individuals he saw. One person was about "five seven, very heavy-set," wearing an "olive green pull over shirt and a medium blue pants." The second person was about "five foot eight, medium build, had sort of long afro, wearing blue jean bib overalls." And the third, later identified as the defendant Burks, was about "five eight" "155 pounds" "wearing a white shirt and like

tan or kahki trousers." He was carrying a "long, narrow object." The three persons were "holding some sort of tools." Officer Podolak then went through the vacant building's fence, through the back door and entered the vacant building. He searched the building for about five minutes and thereafter went out the front door of the vacant building. When he exited, he noticed several tools lying inside the front door and on the porch. "Some were like in the porth [sic] and some were just inside the door." The objects found and held as evidence consisted of a lug wrench, a screwdriver, a claw hammer and an axe. When Officer Podolak came out of the vacant building, his partner, Officer Priest, was standing outside the front door with the defendant, Burks.

After Officer Podolak got out of the police vehicle at the alley, Officer Priest went around to the front of the liquor store, parked his vehicle and shortly thereafter—"a few seconds"—heard what sounded like someone running through a .vacant building next door. "At this time I seen [sic] 3 figures in the shadows from the light . . . three subjects ran out of the vacant building." Just as the third person came out the front door and "hit the sidewalk," he apprehended this third person. It was the defendant, Burks. Burks was described by Officer Priest as "about five, eight, a hundred and sixty pounds" and wearing "khaki pants and a white shirt." Just about the time the persons were "about to exit the front door," "I heard [what] sounded like metal objects dropping to the floor or porch." The tools were not, so far as the record shows, checked for fingerprints or "dusted."

Officer Podolak then made an inspection of the liquor store building and found a "hole" in the brick wall, and the light from inside the building was shining through.[1]

Sometime later, after the officers found the "hole" and between 1:00 and 2:00 a.

---

1. Photographs show that the "hole" was all the way through the building. Items in the store could be seen from the outside. The bricks, masonry, and panel wall were chopped and cut, and the "hole" to the inside of the building was five or six inches in diameter.

m., the employee, Elizabeth Harris, received a telephone call that the store had been broken into and to "come down" to the store. When she arrived, she met the officer and she opened the store to see if anything had been taken. She saw the hole in the north wall "about this big." As far as she knew, nothing from the store was taken.

Mr. Riggins, the owner of the liquor store, testified that when he returned from his vacation, the hole that had been "knocked through" the wall on the north side had been repaired. He never gave permission to the defendant to enter the store.

The defendant, Burks, explained his presence in the vacant building. The defendant had been "staying around in different vacant buildings because I didn't have any place to stay at that time," although he was working two days out of the week. After he left a tavern and at about 1:30 p.m., he entered the vacant house, went up to the second floor to lie down and "that is when I heard the noise downstairs. Somebody ran out of the building. That frightened me, so I ran down the stairs out to the front and that is when the police were turning the corner and told me to get up against the wall . . .." Mr. Burks had been in the vacant building ten or fifteen minutes when he heard the noise. He had never slept in the vacant building before. He denied being in the "gangway" between the liquor store and the vacant house. He also denied seeing any tools.

At the close of the evidence, the defendant moved for a judgment of acquittal, and counsel for the state requested a "protective order" to restrain defense counsel from arguing the issue of lack of fingerprints on or an analysis of the tools, relying on "State versus Holmes." The court granted the order and instructed defense counsel "not to say anthing about finger prints or any analysis," stating "State versus Holmes was my case. I made the law, so I know what it is all about."

The motion for judgment was denied and the jury was instructed. The jury found the defendant guilty and the defendant was, under the habitual criminal act, sentenced by the court.

On appeal, the defendant contends (1) that the trial court erred in overruling the motion for judgment of acquittal at the close of all the evidence for the reason that the "circumstantial evidence of defendant's guilt was insufficient to prove that defendant attempted to burglarize the M and L Package Liquor [Store]" and (2) the court committed "plain error" in granting the "protective order prohibiting defense counsel from commenting in argument upon the lack of fingerprints and dust analysis . . .."

■ Defendant's principal point is that no submissible case was made. Defendant concedes that a submissible case was made that an attempted burglary took place, but the "remaining issue is whether the evidence was sufficient to make a submissible case that the defendant was one of the guilty persons." The defendant contends that the "sole isolated fact in the case at bar is alleged similarity in clothing." In determining this issue, of course, we view the evidence and all favorable inferences in the light most favorable to the state, together with all reasonable inferences deducible therefrom. Our function is not to substitute our judgment for that of the jury, but we determine only whether the evidence is sufficient to make a submissible case. The state's case is based on circumstantial evidence. No one positively identified the defendant attempting to break into the liquor store or knocking a hole in the north wall.

■ The law is clear that mere presence of an accused at the scene of an offense is evidence to be considered in determining guilt, but to sustain a conviction and to make a submissible case, something more than presence must be shown. Presence at the scene is also insufficient to make a case based on circumstantial evi-

dence. To sustain a conviction, in addition to presence, it is necessary that some form of affirmative participation be shown. There must be some evidence to show that the accused participated. State v. Castaldi, 386 S.W.2d 392, 395 (Mo.1965); State v. Cain, 507 S.W.2d 437, 441 (Mo.App.1974). And any evidence showing affirmative participation is sufficient to support a conviction. Proof of conduct before, during or after the offense are circumstances from which participation may be inferred. State v. Corbin, 186 S.W.2d 469, 471 (Mo. 1945); State v. Castaldi, supra.

■ The evidence to show affirmative participation may be circumstantial. But to warrant a conviction or make a submissible case based on circumstantial evidence, the facts and circumstances must be consistent with each other, must tend to prove guilt, and not only must be consistent with the hypothesis of the defendant's guilt, but must be inconsistent with every other reasonable hypothesis of innocence. State v. Eye, 492 S.W.2d 166, 167–168 (Mo.App. 1973); State v. Cain, supra; State v. Burnley, 480 S.W.2d 881, 882 (Mo.1972).

■ We believe that under all the facts and circumstances of this cause, the evidence shows more than presence of the defendant at the scene of the offense and that there was sufficient circumstantial evidence to make a submissible case.

In the early morning hours of July 17, 1973, at about 1:15 a.m., Officer Podolak saw three persons near the "hole" in the wall of the liquor store run between the two buildings toward the rear of the property, make a U-turn and then run into the vacant building. Officer Podolak described the third person, later identified as the defendant, as being "five eight" "155 pounds" "wearing a white shirt and like tan or kahki trousers." He was carrying a "long, narrow object." Officer Podolak went into the vacant building and searched it but found no one. Very shortly thereafter, Officer Priest heard persons running through the vacant building, and three persons ran out. Just as the third person came out the front door, the officer apprehended him. It was the defendant Burks. Officer Priest described the defendant as "about five, eight, a hundred and sixty pounds" and wearing "khaki pants and a white shirt." He heard metal objects drop to the floor—which later were found to be a hammer, screwdriver, tire tool and an axe. These were seized as evidence.

The person who was seen by Officer Podolak run in the gangway and into the vacant building bore the same physical characteristics and wore the same color clothing as the defendant who was apprehended by Officer Priest coming out of the vacant building. All this occurred as stated at about 1:15 a.m. Defendant was apprehended at a place adjacent to the liquor store which contained the "hole" in the north wall, sufficiently large for light to shine through.

Therefore, a person matching the description of the defendant, Burks, was seen running from the "gangway" toward the rear of the liquor store property, turn, enter the vacant building, and the defendant with the same physical characteristics and type of clothing was apprehended coming out of the vacant building. Additionally, persons were heard running inside the vacant building, tools were found on the porch, a hole was chopped in the north wall of the liquor store, the defendant had never before "slept" in the vacant building, and according to his own testimony, when he was in the vacant building he saw only one person run out of the building. All of these facts together with the above are sufficient, in our opinion, to make a submissible case.

We believe that such circumstances show more than presence at the scene of the offense, that the circumstances are consistent with the hypothesis of guilt, and inconsistent with every other *reasonable* hypothesis of innocence.

We believe, therefore, that the court did not err in overruling the defendant's motion for a judgment of acquittal.

Defendant argues that the state's evidence merely "places defendant in the vicinity of the crime after three suspects were running away" and that under State v. Irby, 423 S.W.2d 800 (Mo.1968), no case was made linking defendant with the crime. But, unlike *Irby*, in which there was a complete void as far as the defendant's complicity was concerned after Irby was seen walking toward the scene of the offense, the defendant here was apprehended coming out of the vacant building, after a person who fitted his description was seen running in the gangway and into the vacant house.

The other authorities cited by the defendant are likewise not controlling of the issue here.

 Next, defendant contends that the court erred in granting the protective order concerning the lack of fingerprints and dust analysis. This point was not preserved in the motion for new trial. Rule 27.20(a), RSMo. 1969, V.A.M.R. Defendant, however, desires us to consider the point as "plain error." The plain error rule allows reversal where there is "manifest injustice or miscarriage of justice." Rule 27.20(c), RSMo. 1969. Since the point was not preserved and we find no manifest injustice, we decline to hold that the protective order of the trial court was error. See State v. Overall, 519 S.W.2d 549 (Mo.App.1975).[2]

We have examined the transcript, read the briefs and authorities cited by the parties and conclude there is no prejudicial error, and that the court did not err in submitting the cause to the jury.

The judgment of conviction is affirmed.

McMILLIAN AND GUNN, JJ., concur.

---

2. Even if defendant's contention were preserved for review, there is no merit to this point. State v. Holmes, 389 S.W.2d 30, 34 (Mo.1965).