STATE of Missouri, Plaintiff-Respondent,

v.

Robert H. HARRISON,
Defendant-Appellant.

No. 9669.

Missouri Court of Appeals,
Springfield District.

July 13, 1976.

John E. Hosmer, Public Defender, 30th Judicial Circuit, Marshfield, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before STONE, P. J., and HOGAN and TITUS, JJ.

HOGAN, Judge.

A jury found defendant Robert Harrison guilty of felonious stealing as defined and denounced by §§ 560.156 and 560.161, RSMo 1969, V.A.M.S.[1] The Second Offender Act, § 556.280, was found to be applicable and defendant's punishment was assessed at seven years' imprisonment. Defendant appeals.

The cause involves a theft of money from the Tee Pee Villa, an establishment near Warsaw, Missouri. According to Mrs. Myrl Dahlgren, the proprietress, the Tee Pee Villa consists of a "restaurant, motel units, a trailer court, [and] 3.2 beer." It is open weekends, and therefore Mrs. Dahlgren goes "downtown" to the bank on Monday to replenish her supply of change for the cash register.

On September 24, 1973, Mrs. Dahlgren left about 1:00 or 1:30 p. m., obtained $160 in currency and coins and returned at 3:00 p. m. Defendant was seated either at the counter or in a booth near the counter, close to the cash register. The cash register was "short on quarters and pennies" so those coins were put in the register. Mrs. Dahlgren left her "money bag" lying "right on the counter", went to her living quarters, changed to her work clothes and returned to the restaurant. She then realized that her money bag and the defendant were gone. Mrs. Dahlgren spent some time trying to locate her money bag on the premises; she then called the sheriff. When the money bag was taken, it contained about $150 in currency and coins, some checks "that had come back", and Mrs. Dahlgren's "extra keys that [she] had for the restaurant". The keys (here State's exhibit 7) were positively identified by this witness; one key is for the doorknob on the front door of the tavern, the other for an "extra security" padlock attached to the front door.

The State also had evidence from Ron Flippin, the City Marshal of Cole Camp, which is 22 miles from Warsaw. At 5:30 p. m. on September 24, Mr. Flippin was asked to apprehend the defendant. Mr. Flippin was distracted by other duties, but about 8:15 p. m. he was driving "through town" in company with a deputy marshal, and "noticed [defendant] setting in the Keg Tavern." Mr. Flippin got out of his car to call a deputy sheriff. While Flippin was making the call defendant "came out of the Keg Tavern" and took flight. Flippin and his deputy pursued the defendant down an alley, but were unable to catch him. Flippin then went to the defendant's house. The defendant was not in, but his wife promised to notify the officers if he came home. About 12:30 a. m. on September 25, defendant's wife advised Flippin that the defendant was at home. The marshal went to defendant's residence and discovered defendant in a small "ball park" near his house. Defendant was "[l]aying flat on the ground, out on all fours."

Defendant was arrested and taken to the City Jail in Cole Camp. A search of defendant's person disclosed that he had a "handful of change, loose change, and . . . a key ring, with two keys on it" in his left pocket. In defendant's right pocket, there was a ten dollar bill and other currency "doubled up and wadded up". This witness identified exhibit 7 (the keys) as articles taken from defendant's person at the jail.

To corroborate Mr. Flippin, the State called Al Doty, Deputy Sheriff of Benton

---

1. References to statutes and rules are to RSMo 1969, V.A.M.S. and V.A.M.R.

County. Mr. Doty testified that he was present when defendant was brought to the Cole Camp City Jail, that he advised defendant of his "constitutional rights" and that State's exhibit 7 came from defendant's person when he was searched in Cole Camp. The keys, Mr. Doty said, were sealed in an envelope and surrendered to the sheriff at Warsaw. It was demonstrated to the jury that the keys taken from the defendant operate the door lock and padlock taken from the front door of the Tee Pee Villa. We have independently demonstrated that fact here.

A word concerning the defendant's brief seems appropriate. Time and again since the enlargement of its jurisdiction by the amendment of Mo.Const. Art. V, § 3, the Court of Appeals, hagridden by an utterly unmanageable caseload, has called attention to counsel's duty to brief the appeal in compliance with the rules of the Supreme Court governing appellate practice. *State v. Schulten*, 529 S.W.2d 432, 433–434[1–4] (Mo.App.1975); *Cole v. Cole*, 516 S.W.2d 518, 521–522 (Mo.App.1974). On a criminal appeal, as on a civil appeal, the appellant has the burden of demonstrating error, see *State v. Chase*, 444 S.W.2d 398, 404[10–11] (Mo. banc 1969); *State v. Jackson*, 477 S.W.2d 47, 51[2] (Mo.1972), and that must be done in accordance with the rules. Perfection is not required, but it is necessary for counsel to locate the allegedly erroneous ruling in the record, state explicitly why he conceives the ruling complained of constituted error, and furnish the court with some semblance of authority in support of his position. In this case, quite able counsel has made five separate allegations of error; in no instance has the allegedly erroneous ruling been located in the record. With the exception of the allegation that the evidence does not support the judgment of conviction, none of the "points" asserted have been developed in the "argument" part of the brief. We shall consider the sufficiency of the evidence to support the conviction, but we cannot become advocates for the defendant, and we decline to review the points not developed in the argument. *Bopp v. Spainhower*, 519 S.W.2d 281, 286[7]

(Mo. banc 1975); *State v. Schulten, supra*, 529 S.W.2d at 434[4].

The burden of the defendant's point concerning the sufficiency of the evidence is that the criminal agency of the defendant was not established. Counsel emphasizes that the State's case was circumstantial and he cites a number of decisions which state the familiar rule that when the evidence of an accused's criminal agency is entirely circumstantial the facts and circumstances relied on to establish guilt must be consistent with one another and consistent with the hypothesis of guilt, and must so satisfactorily and clearly point to the accused's guilt as to exclude every reasonable hypothesis of innocence. *State v. Thomas*, 452 S.W.2d 160, 162[1] (Mo. 1970); *State v. Miller*, 536 S.W.2d 524, 526[1] (Mo.App.1976). That statement is undoubtedly sound, but it is also the law that any fact, including the criminal agency of the defendant, may be proved circumstantially, *State v. Chase, supra*, 444 S.W.2d at 402[2]; *State v. Brewer*, 325 S.W.2d 16, 20[11] (Mo.1959), and the circumstances relied on need not be absolutely conclusive of guilt and need not demonstrate the impossibility of innocence. *State v. Thomas, supra*, 452 S.W.2d at 162[2]; *State v. Taylor*, 445 S.W.2d 282, 284[5] (Mo.1969); *State v. Brunson*, 516 S.W.2d 799, 803[7] (Mo.App. 1974). Moreover, the defendant offered evidence, thereby waiving any error in the refusal of his motion for judgment of acquittal at the close of the State's case-in-chief, *State v. Hill*, 438 S.W.2d 244, 247[5] (Mo.1969), and in such circumstances, we must accept as true all record evidence favorable to the result reached, including that offered by the defendant, together with the inferences reasonably to be drawn therefrom, and disregard the evidence and inferences to the contrary. *State v. Johnson*, 447 S.W.2d 285, 287[2] (Mo.1969); *State v. Truster*, 334 S.W.2d 104, 107[2, 3] (Mo.1960).

So considered, and taken fact by fact and circumstance by circumstance, the record demonstrates:

1. The defendant was present in the Tee Pee Villa near the place where Mrs.

Dahlgren's money bag was taken; in addition, the record shows that he had previously lived at the Villa for some time; presumably he was familiar with the owner's practice of replenishing her change each Monday. Defendant sought employment while Mrs. Dahlgren was present; the offense occurred in September, and defendant had not been gainfully employed since February. The presence of the accused at the place of commission of a crime may be considered as an incriminating circumstance if the total circumstances raise a reasonable inference that the accused was a participant or an aider or abettor. *State v. Chase, supra,* 444 S.W.2d at 403[7]; *State v. Simmons,* 494 S.W.2d 302, 305[4] (Mo.1973). In this particular case, the circumstances just recited were relevant to show defendant was in need of money and to indicate a probable theft. 2 J. Wigmore, Evidence § 392, at 342 (3d ed. 1940).

2. When the defendant saw the City Marshal of Cole Camp and his deputy shortly after the money was found missing, defendant took flight. No explanation of this flight inconsistent with defendant's guilt was offered, nor does any appear from the record. Defendant's unexplained flight could properly be considered as a circumstance indicating guilt. *State v. Simmons, supra,* 494 S.W.2d at 305[4]; *State v. Kilgore,* 447 S.W.2d 544, 547[4] (Mo.1969); 2 J. Wigmore, supra, § 276.

3. When the defendant was taken in custody, he was in possession of a quantity of money; the denominations of the money found and the money taken corresponded fairly closely. In addition, the other circumstances shown indicate that the defendant's possession of money was recent and sudden. In such circumstances, the possession of unidentified money was a relevant circumstance permitting an inference of guilt. *Hansbrough v. United States,* 156 F.2d 327, 329[6] (8th Cir. 1946); *State v. Garrett,* 285 Mo. 279, 289–290, 226 S.W. 4, 7[10] (1920); 1 J. Wigmore, Evidence § 154 (3d ed. 1940).

4. The defendant was shown to be in exclusive possession of keys which were in the money bag and which were the very keys to the front door and the padlock on the front door of the Tee Pee Villa. Contrary to defendant's position, the keys were admissible in evidence and his possession of the keys constituted a persuasive circumstance indicating his guilt. *State v. McBride,* 366 S.W.2d 374, 378–379[7] (Mo. 1963); *State v. Hedgpeth,* 311 Mo. 452, 459–460, 278 S.W. 740, 742[4, 5] (1925); 1 J. Wigmore, supra, § 153.

Conceding that the determinative question is one to be decided upon the peculiar facts of a particular case, *State v. Simmons, supra,* 494 S.W.2d at 305[5], we find the evidence here sufficient to warrant a finding that defendant was guilty beyond a reasonable doubt. The judgment is accordingly affirmed.

All concur.