STATE of Missouri, Plaintiff-Respondent,

v.

Glezey TAYLOR, Defendant-Appellant.

No. 37404.

Missouri Court of Appeals,
St. Louis District,
Division One.

Sept. 21, 1976.

**92**

Richard A. Fredman, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

McMILLIAN, Judge.

Defendant Glezey Taylor appeals from a jury conviction of attempted burglary, second degree. Appellant asserts that the trial court erred in overruling his motion for acquittal because there was insufficient evidence to show that he actively and affirmatively aided and abetted the commission of the crime. Appellant also contends that the trial court erred in admitting into evidence his statement made to police at the time of his arrest because there was no showing that appellant knowingly and intelligently waived his constitutional rights. Upon our review of the record, we have discovered insufficient evidence to constitute a submissible case against appellant. We must, therefore, reverse the decision of the trial court.

Because appellant challenges the sufficiency of the evidence, "in determining the sufficiency of the evidence, this court accepts all evidence, circumstantial or direct, tending to support the conviction together with all favorable inferences reasonably to be drawn therefrom," *State v. Lemon,* 504 S.W.2d 676, 679 (Mo.App.1973).

Viewed in the light most favorable to the state, the evidence showed the following. At about 10:30 A.M., a mailman saw appellant and a companion in the vicinity of an apartment at 6001a McPherson Avenue, on the north side of the street. The appellant was standing alongside his car parked at the curb about (20) twenty feet from where his companion was standing inside the screen door of the apartment. The mailman continued on his delivery route on the south side of the street but kept looking over his shoulder to observe the activities of the two men since he was familiar with the occupant of the apartment and knew that he had left for work at 5:00 A.M. The mailman could not see what the man at the door was doing or if he was doing anything. The mailman returned on his route on the north side of the street. When he was about fifty (50) feet away from the apartment, the man at the door walked down the driveway. He and the appellant got into the car and drove away. The mailman did not see anything in the hands of the man as he walked down the driveway. When he delivered the mail at 6001a McPherson Avenue, he noticed the front door had been pried at as evidenced by pry marks and a broken lock. He, therefore, alerted a neighbor to call the police. Before the police arrived, as the mailman was making deliveries in the next block, the appellant and his companion drove by him again, pulled over to the curb for a few minutes and then drove away.

When the police arrived, the mailman gave them a description of the two men and the car license number. The police arrived at the appellant's house at approximately 11:30 A.M. A few minutes later, appellant and his companion arrived. Both men were arrested for suspicion of burglary, placed in the patrol car and advised of their rights. The arresting officer looked into appellant's car and found a screwdriver and crowbar lying on the floorboard on the passenger side. Microscopic examination of the screwdriver and crowbar revealed nothing on these tools matching any of the wood samples from the apartment door. It was

established, however, that this microscopic examination produced positive results in only about one-third of the cases.

Over the objection of defense counsel, a policeman recounted a statement made by appellant at the police station. The appellant's statement was to the effect that he had been in the 5900 block of McPherson Avenue eating hamburgers and talking to a friend whose name he could not remember and that he had not picked up Charles Martin, the man with whom he was arrested, until 11:00 A.M., on Cora Street.

Appellant testified and offered explanations of his conduct and of the presence of the tools in his car.[1]

To make a submissible case of aiding and abetting the state must introduce evidence of more than mere presence at the scene of the crime, *State v. Minor,* 531 S.W.2d 101, 102 (Mo.App.1975). Presence is but one factor that may be viewed as creating an inference of guilt. Association with other parties before, during and after the offense may also be an indicium of guilt, *State v. Burks,* 521 S.W.2d 11, 15 (Mo.App. 1975). Flight from the scene of the crime or from arresting officers might also be incriminating, *State v. Thompson,* 363 S.W.2d 711, 715 (Mo. banc 1963). Basically, to make a submissible case there must be some evidence that "the defendant in some fashion associated himself with the venture or participated in the crime in some manner as something he wished to bring about or to make the offense succeed," *State v. Jackson,* 519 S.W.2d 551, 557 (Mo.App.1975). In addition, where the evidence against appellant is wholly circumstantial—

"In order to warrant a conviction or make a submissible case based upon circumstantial evidence, the facts and circumstances must (a) be consistent with each other, (b) be consistent with the hypothesis of the guilt of the accused, (c) be inconsistent with innocence, and (d)

point so clearly to guilt as to exclude every reasonable hypothesis of innocence. . . ." (*State v. Cain,* 507 S.W.2d 437, 441, Mo.App.)

There are, of course, numerous cases dealing with the sufficiency of the evidence of aiding and abetting.[2] The state's brief presents three cases in which submissible cases were found. All appear distinguishable from the present case.

In *United States v. Jarboe,* 374 F.Supp. 310 (W.D.Mo.1974), cert. den., the defendant admitted driving his partner to the bank in order to case the bank. The defendant stayed outside in the car with the motor running and helped his partner to hide after the bank robbery. The defendant's contention was that there was no evidence that he shared the intent of his partner in robbing the bank because he did not know his partner was actually robbing the bank until he came out. It was in this context, that the *Jarboe* court disposed of the defendant's contention on grounds that, "One who is the driver and 'lookout' or simply a 'lookout' aids and abets the commission of [the] crime. One who takes another to the scene of the crime and assists the active culprit to get away cannot claim innocence." *Id.* at 315. In *Jarboe,* the defendant, in effect, admitted involvement and attempted a technical argument to overturn his conviction. In the present case, there was no admission of involvement or evidence of a pre-arranged scheme or attempts at concealment.

In a second case advanced by the state, *State v. Hudson,* 508 S.W.2d 707 (Mo.App. 1974), the defendant was charged with robbery of a delicatessen truck and assault of a police officer. The evidence showed that defendant and a friend approached a delicatessen truck with guns in hand. The defendant then apparently said that he did not think they should go through with the robbery. He walked around behind the truck. When a policeman approached, the

---

1. Because we are only judging the sufficiency of the evidence, we must assume that the jury totally disbelieved the appellant's explanations.

2. See Mo. Digest, Annot. Criminal Law

defendant jumped out and shot him. To answer defendant's contention that there was insufficient evidence to support the robbery conviction, the court noted:

"Under these facts, defendant's activity at the scene of the crime was more than mere presence. . . . Presence, companionship and conduct before and after the offense are circumstances from which one's participation in the criminal act may be inferred. . . ." *Id.* at 709.

It seems that the defendant in *Hudson,* supra, was much more clearly involved in an active way in the perpetration of the crime than the appellant in the present case.

The final case suggested by the state, *State v. Ramsey* 368 S.W.2d 413 (Mo.1963) is the closest parallel to the present case. In *Ramsey,* the police were called at 2 A.M. to a store where a burglary had just been committed. When they arrived, one man was just entering a car in which the defendant was a passenger. A third man fled. A search of the car revealed a padlock, a tire tool, and a pinch bar on the floor behind the front seat. The padlock was the one that had been on the door of the store; analysis of the tire tool revealed paint matching the paint on the store door. Recognizing that every case must be decided on its own facts and that "one's 'presence' may have substantially different meanings and raise wholly different inferences under differing circumstances. . . ." *Id.* at 417, the *Ramsey* court concluded that:

". . . Here there were physical facts showing the commission of a crime, and we conclude that, under all the circumstances, a finding of defendant's guilt did not rest upon mere suspicion, conjecture, surmise or inference upon inference. . . ." *Id.* at 418.

In the present case, we find no such hard evidence of the actual commission of a crime by appellant and his companion because the tools found in appellant's car could not be connected with tools used in the attempted burglary. In addition, appellant's presence at 10:30 A.M., in a residential area seems less suspicious than presence outside a closed, burglarized store at 2:00 A.M. Finally, there is no evidence of attempted flight upon encountering the police.

Another pertinent case is *State v. Simmons,* 494 S.W.2d 302 (Mo.1973). In *Simmons,* the police having been advised of the presence of prowlers onboard a large boat arrived at the scene at about 6:00 A.M. When they arrived, they saw two men passing items over a fence. The defendant was standing on the first deck and had a clear view of his two companions. Upon sighting the police, he fled. Recognizing that each case must be judged on its own facts and that one's "presence" may have different meanings depending on the circumstances, the *Simmons* court held that the evidence established more than mere presence, *id.* at 305. The fact that the defendant admittedly had trespassed onto the boat with his two friends coupled with evidence of his clear view of the active perpetration of the crime and his unexplained flight were held sufficient to constitute a submissible case, *id.* In the present case, there is neither admitted involvement in the preparatory stages of the crime nor flight.

In contrast to the cases discussed above, the appellant has directed our attention to *State v. Castaldi,* 386 S.W.2d 392 (Mo.1965), a case in which the defendant's tampering conviction was reversed on appeal because of insufficient circumstantial evidence. In *Castaldi,* defendant was discovered in the woods along with two companions who were cutting up a stolen car with torches; Castaldi was just standing watching. He denied involvement in the cutting operation and insisted that he and his partners had discovered the burning car while walking through the woods and had attempted to extinguish the fire with dirt and water. No traces of dirt or water were found on the car. When the police expanded their search beyond the immediate area of the scene of the cutting, Castaldi left the area in the car of one of his companions. In holding that the state had failed to carry its burden of

proof to show circumstances inconsistent with innocence, the court noted:

". . . [T]he most that can be said is that the state proved Castaldi's presence at the scene of the crime, an opportunity to commit the crime, suspicious circumstances, and perhaps flight." *Id.* at 395.

■ We feel that the *Castaldi* case suggests a proper analysis of the present case. In both *Castaldi* and the present case, the defendants offered alibi stories which seemed to be contradicted by the evidence. In both cases, the state's evidence showed simply presence at the scene. In neither case, was there any clear evidence of active involvement. The state attempts to distinguish *Castaldi* on the basis that the defendant in the present case was acting as a "lookout." Characterization of the appellant as a "lookout" is, of course, merely conclusory, *cf. United States v. Irons,* 475 F.2d 40, 42 (8th Cir. 1973). No evidence was introduced that appellant warned his companion of the approach of the mailman. Actually, the present case presents a more compelling situation for reversal of the conviction than in *Castaldi.* In the case now before us, there was no evidence of attempted flight by the appellant. In addition, the evidence that the burglary was actually attempted by the appellant's companion is wholly circumstantial.

Our review of the record reveals no evidence upon which a jury could legitimately determine that the state demonstrated appellant's guilt beyond a reasonable doubt. ". . . Mere suspicion, however, strong, will not supply the place of evidence when life or liberty is at stake." *State v. Jones,* 106 Mo. 302, 17 S.W. 366, 369 (Mo.1891). Since it also appears from the record and briefs in the case that the state would be unable to present any new evidence in a new trial, the proper course is to order the discharge of the appellant, *State v. Morse,* 503 S.W.2d 450, 451 (Mo.App.1973).

Because of our disposition of appellant's allegation of insufficient evidence to support the conviction, we need not reach the issue of alleged error in the admission of appellant's statements to the police.

Judgment reversed and defendant ordered discharged.

WEIER, P. J., and RENDLEN, J., concur.