STATE of Missouri, Respondent,

v.

Leonard FRAZIER, Appellant.

No. KCD 28572.

Missouri Court of Appeals,
Kansas City District.

Jan. 31, 1977.

Thomas M. Larson, Public Defender, Lee M. Nation, Asst. Public Defender, Sixteenth Judicial Circuit, Kansas City, for appellant.

John C. Danforth, Atty. Gen., David L. Baylard, Asst. Atty. Gen., Jefferson City, for respondent.

Before SWOFFORD, P. J., and SHANGLER and DIXON, JJ.

PER CURIAM:

Appellant was convicted of the commission of the crime of murder in the second degree by the verdict of a jury. In accordance with the verdict, the court sentenced appellant to 30 years imprisonment in the Department of Corrections, Jefferson City, Missouri. The dispositive issue is whether the state made a submissible case, and in the consideration of the facts below, it must be concluded that it did not, and the case must be reversed and remanded for new trial.

On May 12, 1975, Michael Holiway and his two brothers, David L. (the deceased), and Paul, were in Michael's 1965 Chevelle on the way from their residence to a store. Michael was driving, David was in the front passenger seat and Paul was in the back seat. At about 7:30 or 8:00 p.m., Michael skidded to a halt next to a brown Thunderbird which was parked in the street at 44th and Indiana in Kansas City. Michael and his brothers spoke to the three men in the Thunderbird, and Michael recognized the man in its back seat as Charles Edwards, and identified appellant as the man riding in the front passenger side of the Thunderbird. There was then a conversation between one of Michael's brothers, Michael

and the men in the Thunderbird, and the driver of the Thunderbird (who was Warren Frazier, appellant's brother) pulled a gun and shots were fired into the Holiway car. Michael tried to pull David down, but David was shot and killed, and Michael was shot in the right lung. Michael saw only one gun in the Thunderbird and it was in the hand of Warren Frazier, the driver.

Paul Holiway, 14 years old, testified that on the way to the store a car parked to their right was encountered. Someone in that car "hollered" and Michael Holiway stopped, and David Holiway, in the front passenger seat, talked with a man in the other car, asking, "What you all got the guns for?" He saw the driver of the other car [Warren Frazier] with a gun, and he saw no other guns. Shots were fired at the Holiway car, and Paul ducked down in the back seat. He recognized the occupant in the back seat of the other car as Charles Edwards, who did not have a gun, but he did not see the man in the front passenger seat of the other car [appellant] with a gun either. After the shooting Michael told Paul to go home, and he ran home to get help. According to Paul, there were no guns in the Holiway car.

Richard Beal, arriving at the scene about 8:04 p.m., found the Chevelle with its passenger door open and deceased lying in the street with his feet inside the door. There were nine (bullet) holes in the passenger door, and one exit hole on the driver's side. Gerald R. Borchers found six spent 9 millimeter casings and one spent bullet outside the car. He also found spent bullets, lead fragments and copper jackets inside the car. Dr. Bonita J. Peterson removed the three slugs from deceased's body upon performing an autopsy, and in her opinion, death was caused by gunshot wounds to the back and head with massive internal bleeding. The three slugs were examined by John Clayton, supervisor of the Firearms and Toolmarks section of the Regional Crime Laboratory. Clayton determined that two of these slugs were fired from a .38 caliber special, and the other slug came from a 9 millimeter, semi-automatic gun which was also the size of slug found outside the car. It was Clayton's expert opinion that two different weapons were involved in the assault.

Michael Holiway testified that when the two cars were stopped at 44th and Indiana, he and his brother asked "What is going on?" and Michael said (to the driver of the other car) " 'How come you have been cruising around the area?' " He said, " 'Ah, it ain't nothing.' Then they just pulled the gun and started firing. Q. You said something about cruising around the area. Had you seen this automobile before that day? A. Yes, sir. Q. What at? A. I saw it down on 43rd, going—it was right off of Indiana and 43rd, because I helped an apartment man move that day. I saw it earlier. And then just a little bit before that, I saw it pass by my house. Q. When you saw that car pass by, did you recognize anyone that was in it? A. No, sir. Q. Okay. So when you were asking about them cruising around, your comments were directed toward the car on that particular time? A. Yes, sir." On cross-examination, Michael testified he had never had any hassle with Leonard Edwards, and "Q. You do not recall that, in Complaint No. G-170789 you were charged with Assaulting Leonard Edwards by shooting at him? A. Yes, I was charged with him, but it wasn't true. Q. It wasn't true? A. No, it wasn't. Q. You were charged on April 27, 1975, at 0345 hours with distru̲bing the peace of Leonard Edwards by shooting at him; is that correct? A. Yes, it is correct. Q. All right. You know that Leonard Edwards is the brother of Charles Edwards? A. Yes, he is. Q. The man whom you said was in the car, and you have said? A. No, I didn't say he was in the car. Q. Charles Edwards was not in the car? A. Yes, Charles Edwards was in the car. Q. Now, at the time this shooting incident took place, in which you claimed that you and your brother were unarmed, this case in which Charles Edwards had, or Leonard Edwards has accused you of shooting at him, had not yet been settled; had it? A. No, sir; it hasn't̲?"

The state argues that the evidence that the Frazier car was cruising around the Holiway neighborhood, with the evidence that Michael Holiway had been charged with assaulting Leonard Edwards, created a reasonable inference that appellant, Warren Frazier and Charles Edwards, were out to avenge the assault upon Leonard, and thus appellant was present at the scene of the crime by preconcert. The state cites and quotes 22 C.J.S. Criminal Law § 88(2), p. 266, "So where one's presence is by preconcert, he may be guilty as an aider and abettor, although neither by word nor by act does he encourage or discourage the commission of the felony; and a conspirator's presence at the scene of the crime constituting the object of the conspiracy may warrant his conviction, notwithstanding he was not participating in the commission of the crime." The fallacy of the state's argument is that there was no evidence at all of a conspiracy to avenge the assault upon Leonard Edwards. There was no act done, under the evidence, in furtherance of any such conspiracy. There was no evidence that any of the occupants of the car at 44th and Indiana, including appellant, were in it as it was seen by Michael some time before. There is, of course, no evidence that appellant did anything to participate in the shooting. He was merely present as a passenger in the front seat. There is no evidence upon which an inference that appellant was an aider and abettor could be legitimately based. Under this record, which is bereft of any evidence concerning an agreement or conspiracy or "presence by preconcert", all that is shown is appellant's presence in the automobile at the time of the shooting. Although many times distinguished upon facts showing participation in the commission of crimes beyond mere presence, *State v. Castaldi,* 386 S.W.2d 392, 395[1–3] (Mo.1965), controls: "Presence of the accused at the commission of a felony is evidence to be considered in determining whether he was guilty of aiding and abetting, but in order to aid and abet another in the commission of a crime something more than mere presence must be shown. * * * It is necessary that the accused 'associate himself with the venture' . . . (citing case); that some form of affirmative participation be shown (citing case)—participation in the crime as something that he wished to bring about; that he sought by his action to make it succeed, (citing case); that he 'consciously shared' in the criminal act. (Citing case)." It was said in *Castaldi* that flight is a circumstance to be considered against an accused in connection with other evidence of the commission of a crime. The state argues here that appellant fled the scene. But the evidence is that appellant's brother was behind the wheel of the car. There is no evidence that appellant had any control over the car. Although evidence of the independent flight of a conspirator may be admissible as part of the res gestae, 22A C.J.S. Criminal Law § 777, pp. 1181, 1184, there is no proof that Warren Frazier, the driver of the car, was a conspirator. The proof showed that two weapons were used in the shooting, but there is no proof that appellant had or fired any weapon. The state cites *People v. Kolep,* 29 Ill.2d 116, 193 N.E.2d 753 (1963); and *State v. Simmons,* 494 S.W.2d 302 (Mo. 1973). Both may be distinguished. In *Kolep,* the charge was murder of one Roseann Beckman, whose death resulted from hitting her head on the sidewalk after she was struck by co-defendants. The court found a common design of Kolep and the co-defendant to commit an unlawful act—have intercourse with Beckman against her will, to which Kolep assented. In *Simmons,* there was preconcert of action of defendant in climbing over a fenced area with others and trespassing on a boat. He fled upon being discovered and concealed himself. Obviously, those facts, as the court held, constituted more than "mere presence."

It does not appear that the state may not produce evidence of a conspiracy of appellant and his companions to commit an unlawful act—the avenging, if so, of the prior assault by Michael Holiway upon Leonard Edwards. For this reason, the case is not reversed outright. *State v. Morse,* 503 S.W.2d 450, 451 (Mo.App.1973); *State v. Wade,* 531 S.W.2d 726, 730 (Mo. banc 1976).

If, however, on further proceedings, or consideration by the state, such evidence is not produced or is not likely to be produced, or if there is no further showing of his active participation, the appellant should be discharged.

The judgment is reversed and the case is remanded for new trial.