**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Dennis STILLIONS,
Defendant-Appellant.**

No. 48422.

Missouri Court of Appeals,
Eastern District, Division One.

Feb. 26, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 9, 1985.

Douglas L. Levine, Ferguson, for defendant-appellant.

John Munson Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KAROHL, Judge.

Defendant appeals conviction for stealing over $150. § 570.030 RSMo 1978. This case was tried jury waived. Defendant's motions for judgment at the close of the state's opening statement and at the close of the evidence were denied. In these motions and on appeal defendant complains that the evidence was insufficient to sustain the conviction. We disagree and affirm the finding of guilt based upon cir-

cumstantial evidence and the subsequent judgment and sentence.

In September 1982 defendant moved to St. Louis from Florida with his second wife and her child. He left Florida to avoid a former wife who was threatening to have him arrested for non-payment of child support. He rented an apartment in St. Louis under the name of Dennis Simmons so that his ex-wife or Florida authorities could not find him. He paid two months rent in cash. In the middle of October 1982 he began working for Diquie's Market in Franklin County, Missouri under his true name.

Prior to the present crime, which occurred on December 10, 1982, there was a break-in and theft of merchandise at Diquie's. All employees including defendant were fingerprinted and gave their birth dates and social security numbers to the police who ran a record check on each. The employees were told the information was needed for that purpose. The check on defendant disclosed no outstanding warrant for defendant. Defendant did not leave his employment to avoid the possibility of local police uncovering an active Florida warrant.

On Friday, December 10, 1982 defendant was the night manager at the market. He closed the store and locked up between 9:20 and 9:30 p.m. At that time the store and its contents were in good order. Particularly there was a price sheet affixed to a bulletin board mounted on a door in the back room which also contained the store safe. The safe and all doors were checked and locked by defendant.

On Saturday, December 11, 1982 at 7:30 a.m. defendant and the day manager, Mr. Brandt, opened the market. They found the bulletin board ripped off the wall, a price sheet on the floor, the safe open and empty, and several thousands of dollars missing. There was no evidence of a break-in.

Detective Horn seized the price sheet because marked upon it was a partial tennis shoe print. He testified that Brandt and defendant told him they had not walked on the price sheet that morning.

He also testified that defendant was wearing tennis shoes. Diquie Omer, the owner of the market, said defendant wore such shoes often. After defendant's arrest his tennis shoes were seized and ink prints made of the soles. A criminologist compared the dust print [approximately one-fifth of the full shoe print] on the price sheet with the ink prints. Utilizing plastic overlays she found a similar configuration between the dust print and the right shoe print in the area of the ball of the right foot. She found no points of dissimilarity. The cleat marks matched as to relative location and "the wear patterns are similar." The cleats are cone shaped with the wider circle against the sole of the shoe and the smaller circle exposed. As the sole is worn away the holes become larger and farther apart. This results in the wear pattern. She concluded that defendant's right shoe could have made the dust print. This was based on the configuration and the wear patterns "which would be the uniqueness." She could not positively say defendant's shoe made the dust print. In her view comparison of shoe prints is not as exact a science as ballistics or fingerprints.

Defendant left work early on Saturday, December 11, 1982 and never returned. Within a day or two he moved his residence and rented an apartment in the name of Dennis Harris. In so doing he paid $500.00 cash. Police traced the move through his stepchild's school records.

The sum of defendant's evidence was his own testimony. He secured the store on Friday evening and left it in good order. He could not say whether he stepped on the price sheet on Saturday morning before the police secured the scene. He used an alias and paid cash for rent both before and after the crime. His suspicious actions were solely motivated by a need to avoid arrest for failure to pay child support in Florida.

■ In reviewing the sufficiency of the evidence, even where wholly circumstantial, the evidence is viewed in the light

most favorable to the state. All contrary evidence and inferences must be disregarded. *State v. Ailshire*, 664 S.W.2d 630, 632 (Mo.App.1984). It is not the duty of this court to weigh the evidence, but to determine whether there was substantial evidence to support the verdict. *State v. Anderson*, 663 S.W.2d 412, 414 (Mo.App.1983). Because defendant in his sole point on appeal claims error in failing to sustain a motion at the close of the state's opening statement we recognize the authority of the trial court to sustain such motion if it affirmatively and clearly appears that the statement of the charge against the defendant cannot be sustained under any view of the evidence. *State v. Seddens*, 680 S.W.2d 364, 365 (Mo.App.1984). In testing the sufficiency of the opening statement, the facts stated therein and the reasonable inferences therefrom are accepted as true. *Seddens*, 680 S.W.2d at 365.

▪ We conclude that the opening statement properly recognized the state's responsibility to inform defendant of the contemplated course of the prosecution in order that he could meet the charges against him. *State v. Kirksey*, 658 S.W.2d 60, 61 (Mo.App.1983).

▪ The evidence when viewed under the standard of review recognized in *Ailshire* supports the judgment of the trial court. Evidence that the safe and doors were locked and no evidence of a break-in creates an inference that the thief possessed keys to the building and knowledge of the safe's combination. There was evidence that the store was left in good order and that the bulletin board with the price sheet attached was mounted on the door when the store was closed on Friday evening. There is evidence that defendant did not step on the price sheet at a time when he had an employee's right to be in the back room of the store. This creates an inference that the partial foot print on the price sheet was made during the stealing. The testimony of the criminologist was evidence from which it may be inferred that defendant's shoe made the partial dust shoe print on the price sheet found in the

vicinity of the safe. This testimony was probative even if it was not represented to be as certain as fingerprint or ballistics comparisons. *See State v. Degraffenreid*, 477 S.W.2d 57, 60 (Mo. banc 1972). Further, there was evidence that three men and one woman worked at the market but no evidence that anyone other than defendant wore tennis shoes. Moreover the configuration and wear patterns marked on the price sheet were similar to those on the ink prints. This evidence is not only consistent with the hypothesis of defendant's guilt but inconsistent with every reasonable hypothesis of innocence. *State v. Bennett*, 560 S.W.2d 310, 312 (Mo.App. 1977). It also constitutes evidence of defendant's affirmative participation in the offense. *State v. Reid*, 453 S.W.2d 946, 948 (Mo.1970).

▪ In addition there is evidence that defendant took measures to avoid arrest for this stealing. "While something more than mere presence at the scene must be shown to support a conviction and while flight is, of itself, insufficient to support a conviction, *State v. Castaldi*, 386 S.W.2d 392 (Mo.1965), each of these circumstances may be considered as evidence of guilt by the trier of facts." *State v. Simmons*, 494 S.W.2d 302, 305 (Mo.1973). The shoe print in the context in which it was proven was circumstantial evidence of the defendant's participation in the theft. His subsequent conduct in abruptly moving to a new apartment under a newly assumed name, his failure to keep an appointment with the police to assist in the investigation and the denial of his true identity and identification under the newly assumed name at the time of arrest constitute evidence of flight. Such conduct may be considered as evidence of guilt. *State v. Puckett*, 611 S.W.2d 242, 245 (Mo.App.1980); *Simmons*, 494 S.W.2d at 305. The trial court as the trier of fact was free to disbelieve defendant's explanation that his efforts in this regard were solely motivated by an effort to avoid a warrant for his arrest for non support. Defendant's knowledge of the investigation of the October burglary and

record check did not cause him to flee. This contradicts his present explanation. Investigation of the subject stealing did not represent a substantial hazard to the defendant when compared with the implication of guilt because of his flight after the December 10, 1982 theft.

We affirm.

PUDLOWSKI, P.J., and GAERTNER, J., concur.