STATE of Missouri, Plaintiff-Respondent,

v.

David Joseph HENDERSON,
Defendant-Appellant.

No. 35686.

Missouri Court of Appeals,
St. Louis District,
Division Two.

Sept. 23, 1975.

Rehearing Denied Nov. 19, 1975.

Application to Transfer Denied
Jan. 12, 1976.

Anderson, Green, Fortus & Lander, Clayton, for defendant-appellant.

John C. Danforth, Atty. Gen., Paul Robert Otto, Preston Dean, Asst. Attys. Gen., Jefferson City, Gene McNary, Pros. Atty., George Westfall, Asst. Pros. Atty., Clayton, for, plaintiff-respondent.

KELLY, Judge.

David Joseph Henderson appeals from his conviction of Manslaughter, § 559.070 RSMo 1969 and sentence to six years in the custody of the Missouri Department of Corrections following a jury trial on a charge of Murder in the Second Degree conducted in the Circuit Court of St. Louis County. We affirm.

On appeal Mr. Henderson, hereinafter the defendant, does not contest the sufficiency of the evidence to support the verdict of the jury, and we may therefore set out briefly the facts most favorable to the jury verdict. *State v. Stapleton*, 518 S.W.2d 292, 296[1] (Mo. banc 1975). In this light, the jury could have found that the defendant shortly prior to 9:10 p. m. on the evening of April 10, 1972, stabbed David Clippard with a Barlow pocket knife while engaged in a fight with him after finding Mr. Clippard and Mrs. Henderson, the defendant's wife, together in a car on the parking lot of the Bowl-A-Rama, a bowling alley, located in Overland, Missouri. Mr. Clippard was dead on arrival at St. Louis County Hospital. Cause of death was established by a medical witness as a stab wound that penetrated the heart. The wound could have been caused by a knife like defendant's knife, but that "would not be an absolute decision on my part." A statement the defendant made to the Overland police officers came into evidence and according to this statement the defendant jabbed at the deceased with his knife several times when the de-

ceased alighted from the car in which he was seated with Mrs. Henderson because he knew the deceased to be a judo-karate expert. He said he did not know whether he struck the deceased with the knife, but when he started to leave he heard his wife call for help and he looked back and saw the deceased lying behind a car. He then went and helped his wife drag the deceased to her car and put him on the front seat. He gave the deceased mouth to mouth resuscitation and then went into the bowling alley, called an ambulance and left the scene. Defendant's defense can best be described as self-defense and the preservation of his marriage from the inroads of the deceased.

Defendant's first allegation of trial error is that the trial court was guilty of error in permitting the prosecutor to refer to the defendant as a liar and perjurer in argument. He contends that on twenty-one separate occasions the prosecutor referred to the defendant during argument as a liar and a perjurer. The State responds by pointing out that there is nothing preserved for review because the defendant made no objections to the argument at the time it was made, and the record supports this position. The defendant would, however, have us consider this as "plain error." Rule 27.20(c).

The thrust of defendant's argument is that the 21 separate references to the defendant as a liar or perjurer were compounded by the use of the words, lie, liar, perjurer and perjury, thirty times in his argument and together caused the prosecutor's argument to be so highly prejudicial, improper and inflammatory as to fall within the Rule.

A reading of the record reveals that of the three persons present at the time the confrontation between the defendant and the deceased took place on the bowling alley parking lot the only one giving testimony was the defendant himself. Mrs. Henderson did not appear as a witness in the case. All of the State's witnesses either arrived on the scene after the event, or took

part in the post-attack investigations. Defendant's statement to the Overland police officers was the only evidence the State had in support of its charge. The defendant took the stand in his own defense and testified to a different version of the facts than those attributed to him shortly after his arrest by the Overland police officers who testified for the State.

In his opening portion of summation, the prosecutor quite properly pointed out to the jury that the main issue in the case was the defendant's credibility when he said:

".  .  . Mr. Henderson has testified in this case and so you have Mr. Henderson's version of what happened. And you are almost bound to base your verdict on whether you believe what he says or whether you disbelieve it."

Very shortly thereafter the prosecutor inquired of the jury whether Mr. Henderson's story as to what happened that night was credible, made reference to the credibility instruction given to the jury by the trial court and said:

"It tells you if you believe that any witness has knowingly sworn falsely to any fact or facts material to the issues in this case, then you must reject such portion of the testimony as you believe to be false. I think there is no question that you all know or believe he tells lie after lie after lie."

Thereafter the prosecutor proceeded to argue the evidence which he contended contradicted the defendant's version of what occurred or which were inconsistent with the defendant's testimony, or were incredible.

■ The law is well settled that a prosecutor must be allowed wide latitude in argument and that in argument he has a right to comment on the credibility of the defendant's witnesses and the truth or falsity of their testimony from the state's point of view. *State v. Griggs*, 445 S.W.2d 633, 636[2] (Mo.1969). When a defendant offers himself as a witness in his own behalf his testimony is subject to the same arguments on the issue of his credibility as is any other witness. *State v. Davison*, 457 S.W.2d 674, 676[4] (Mo.1970).

The Supreme Court of this state refused to reverse a conviction of second degree murder where it was contended that the prosecutor at the close of his argument accused the defendant of lying five times during his testimony and the jury was thus inflamed and prejudiced in *State v. Lay*, 427 S.W.2d 394, 403[9] (Mo.1968). The court there noted that there was no objection to the argument by the defendant and the point was not preserved for review. Nonetheless the court read the argument and failed to see wherein it was inflammatory or prejudicial.

In *State v. Jackson*, 511 S.W.2d 771, 775[7] (Mo.1974) the prosecutor in his argument referred to the defendant as "a liar and a perjurer and a killer." This was not preserved in defendant's motion for new trial and was not therefore preserved for review on appeal. In disposing of the defendant's urging that the Court consider the prejudicial effect of the prosecutor's argument in its entirety as "plain error," the Court said, l. c. 775:

"Because control of argument is primarily the function of the trial court, this court is not prone to examine complaints regarding the matter not properly brought to the trial court's attention."

■ We conclude that in the context of the evidence in this case the argument of the prosecutor did not exceed the bounds of propriety with respect to argument requiring this court to reverse the conviction from which he appeals on this ground and we therefore rule this Point against defendant.

■ Defendant next contends that the trial court erred in permitting the prosecutor to argue, over his objection, that every defendant who is charged with murder and is "on trial for his life" is going to lie under oath and perjure himself, that a person on trial for murder second degree is not going

to worry about perjury and that the defendant was lying from beginning to end.

The incident referred to by the defendant occurred near the end of the prosecutor's rebuttal argument after he had compared a number of contradictions in the testimony of three of the State's witnesses with that of the defendant while he was on the stand. The argument was as follows:

"He deserves to go to the penitentiary for perjury in this court room. You take an oath, to take an oath if you are on trial for your life, are you going to lie under oath? Of course you are.

MR. ANDERSON: I object, Your Honor. He cannot make a statement like that—to the fact that anyone on trial for his life will perjure himself.

THE COURT: Well, this is a matter of argument and the attorney's statement is not evidence. The jury will remember the evidence.

MR. WESTFALL: You ask yourself, is a person on trial for murder second degree, is he going to worry about perjury? You ask yourself that and you ask yourself if Mr. Henderson was not lying from beginning to end. You ask yourself that."

Lifted out of context this argument appears much more likely to produce prejudice to the defendant than when viewed in the light of the evidence and the argument of both the defense and the prosecution. As pointed out earlier in this opinion, the credibility of the defendant was the crucial issue in this case. Instruction No. 6—the credibility instruction—advised the jury that in determining the credibility and weight that it would give to the testimony of the witnesses it could take into consideration certain matters. Among those was the "interest, if any" the witness had in the result of the trial. This argument, in our opinion, constitutes a reference to the fact that of all of the witnesses in the case it is the defendant who has the most to gain if his testimony is accepted by the jury; that, therefore, his credibility is subject to close scrutiny. While this argument could have

been couched in more temperate terms and with less generalization, the courts of this State have allowed prosecutors great latitude in final argument and we conclude that while this line of argument comes close to the line, it does not, in the context in which it was made, constitute prejudicial error, and we rule this Point against the defendant.

■ Defendant's third contention is that the trial court erred in giving the jury an additional instruction wherein he responded to a written note sent to him by the foreman of the jury after the jury had been deliberating for some time. After the jury had commenced its deliberations they sent the trial judge a note reading as follows:

"Two to ten years sentence. Do we say how many years?" In response to this note the trial judge sent a typewritten note to the jury which read:

"The Court cannot give you additional instructions at this time." The first note was received by the trial court at about 7:00 p. m. and after deliberating another hour and 48 minutes the jury sent the trial court another note which read:

"Instruction Number Two. Bottom of Page (sic). 'For not less than two nor more than ten years.' Does this sentence stay as it is, or do we say how many years. 2–3–4–5–6–7–8–9–10."

In response to this note the trial judge, over the defendant's objection, sent to the jury "an additional written instruction" which read:

"In response to the question submitted by the Jury, the Court instructs you that if the Jury finds the defendant guilty, the Jury should then assess a specific punishment within the range specified in the instructions."

The thrust of the defendant's argument in support of this contention is twofold:

First, the word "should" as used in the additional instruction made it mandatory that the jury assess the punishment, and,

Second, this instruction conflicted with Instruction No. 7, the "Kerry Brown Instruction,"[1] and therefore constituted prejudicial error.

The State points out in rebuttal that the defendant does not by his argument contest the right of the trial court to recall the jury and further instruct them. In response to the defendant's argument that the word "should" constituted a mandate, the State argues that in the context of the jury's difficulty the word "should" did not prejudice the defendant. The State reasons that by the note itself the jury advised the trial court that they had arrived at a verdict of guilt but with respect to the punishment that they simply did not know whether they were required to express the period of punishment in terms of a definite number of years. Therefore, any "mandatoriness found in the additional instruction could not have prejudiced appellant."

Defendant's position that under the law of this State and Instruction No. 7 the jury had an alternative. It had a choice to assess the punishment or to have the court assess the punishment. The jury, prior to the court's additional instruction, indicated that they were having trouble with the question of the assessment of punishment, and the trial court by advising the jury that it "should then assess the punishment within the range specified in the instructions" deprived the jury of that alternative and required that the jury assess the punishment, to the prejudice of the defendant.

Our interpretation of the factual situation leads us to a different conclusion than that arrived at by the defendant. As we view the circumstances from the two notes sent to the trial court during the jury deliberation, the difficulties the jury was having had nothing to do with the "Kerry Brown Instruction" and the alternatives afforded thereby to a jury where it had arrived at a verdict of guilty but could not agree on the amount of punishment to be imposed. Rather, the notes advised the trial court that the difficulty the jury was having was confined to how they stated on their verdict form the number of years confinement they had decided the defendant should have assessed, in view of the terminology in the State's verdict-director on Manslaughter— Instruction No. 2. That instruction provides not only for punishment by imprisonment in the Missouri Department of Corrections, but also for imprisonment in the county jail and/or a fine. There was never at any time any indication that the jury was considering any punishment less than two to ten years in the custody of the Missouri Department of Corrections in either of the notes sent to the trial court. Quite the contrary, for the notes merely wanted to know whether the jury should specify the number of years by a definite number. The trial judge's second note merely advised them that if they found the defendant guilty, *then* they should "assess a specific punishment within the range specified in the instructions."

We daresay this is a problem which would not have occurred had the prosecutor in his summation taken a few moments of his argument to explain this requirement to the jurors, but in light of all the circumstances we do not conclude that this additional instruction was either in conflict with the "Kerry Brown Instruction" nor constituted an impermissible clarification of the punishment portion of the State's verdict-director, to the prejudice of the defendant. We rule this point against the defendant.

Defendant's final contention is that the trial court erred in referring to "a Certain Knife as Mentioned in the Evidence" in Instruction No. 2, the State's verdict-director on Manslaughter. The defendant argues that there was evidence that three knives were recovered, all three were marked as exhibits and referred to throughout the trial; that the evidence established that two of the three knives were at the scene of the crime and each appeared to have blood on them. One of these knives was the

---

1. *State v. Brown*, 443 S.W.2d 805, 809[6, 7] (Mo. banc 1969).

defendant's and one the victim's, and there was no "direct evidence" showing which knife, if either, in fact caused the mortal blow to the deceased. For this reason, the defendant argues, the instruction gave the jury a roving commission to speculate which knife of the two found at the scene inflicted the mortal wound. For this reason the defendant argues the instruction was confusing and ambiguous. We have read the cases referred to by defendant in support of this point and do not find them controlling.

■ We have no quarrel with the general holding of *United States v. Bagby*, 451 F.2d 920 (9th Cir. 1971) that instructions should not be confusing, ambiguous or equivocal; nor with *State v. Winn*, 324 S.W.2d 637, 642[2] (Mo.1959) that instructions must not mislead jurors. *Pulse v. Jones*, 218 S.W.2d 553 (Mo.1949), which defendant relies on, is a civil case for wrongful death resulting from a head-on collision of motor vehicles wherein the defendant pleaded specific contributory negligence of the plaintiff in excessive speed, failure to run as near to the right hand side as practicable, failure to turn and pass without interference and operating on the wrong side of the center line. The infirmity in the defendant's contributory instruction there was that instead of requiring that the jury find that the deceased was guilty of any of the specific contributory negligence alleged in the defendant's answer concluded by stating that the plaintiff was barred from recovering if her decedent was guilty of the failure to exercise the highest degree of care "in any way" caused or contributed to cause the collision complained of. In passing on plaintiff's contention that this instruction was reversibly erroneous, the court, l. c. 556, said:

"The general and undefined words 'in any way', instead of requiring a finding of some specific contributory negligence alleged, are as wide open a roving authority to the jury as could be written.

\* \* \* \* \* \*

Contributory negligence is an affirmative defense. When specifically pleaded and proved to have contributed to the collision, it may be submitted for the jury's finding thereon. But the jury may not be told without specific submission of specific contributory negligence merely that if they thought deceased was guilty of contributory negligence *in any way* that plaintiff could not recover."

■ Three different knives were mentioned in evidence. One of these knives was a pocketknife found in the defendant's van on the evening of the homicide and from the evidence was not connected with it. A second knife was found at the scene lying alongside the door to the driver's side of the automobile of the victim, but it was never established whether this knife belonged to the victim. The third knife was positively identified as belonging to the defendant by both his son, who said he had given it to him, and by the defendant as the one he had in his pocket when he approached the automobile in which the victim and Mrs. Henderson were sitting on the bowling alley parking lot. It was the knife which was found at the spot towards which the defendant said he had thrown it, and it was the knife he had in his hand during the scuffle. The pathologist who examined the body of the victim at St. Louis County Hospital was of an opinion that "the wider blade knife" would have inflicted the wound he attributed which caused the death of the deceased, and that knife, in his opinion was State's Exhibit 18—the defendant's Barlow knife.

In this case the Indictment charged that the assault was made upon the victim "with a certain knife." The instruction here under attack used the wording of the Indictment and there was sufficient evidence to support a finding that the defendant stabbed the victim with the Barlow knife he admittedly owned and used to "jab" with on the occasion in issue. We find no error in the wording of this instruction, and rule this point against the defendant.

Those portions of the record which we are required to review, although not challenged in this court by Rule 28.02, have been examined and found to be in proper order.

The judgment of the trial court is affirmed.

CLEMENS, P. J., and STEWART, J., concur.