**STATE of Missouri, Respondent,**

v.

**Robert E. ROBERTS, Appellant.**

**No. KCD 29955.**

Missouri Court of Appeals,
Western District.

Feb. 26, 1979.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 3, 1979.

Application to Transfer Denied
May 17, 1979.

Kevin R. Locke, Asst. Public Defender, Clifford A. Cohen, Public Defender, Kansas City, for appellant.

John D. Ashcroft, Atty. Gen., Paul R. Otto, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., SWOFFORD, C. J., and WASSERSTROM, J.

SHANGLER, Presiding Judge.

The defendant appeals from a judgment of conviction for burglary and stealing returned by a jury verdict and the concurrent sentences of five and ten years imposed by the court upon the defendant as a second offender.

The defendant contends first that the information was insufficient to confer jurisdiction upon the court to sentence under § 556.280, RSMo 1969 [Second Offender Act] for failure to allege that the offense for which defendant had been previously convicted was "punishable by imprisonment in the penitentiary." This contention, although cast in a somewhat different frame, is answered by our opinion in *State v. Clemmons*, Mo.App., 579 S.W.2d 682 [KCD

29768] adopted concurrently. The application of § 556.280 includes the proof that the defendant was convicted of a prior offense *punishable by imprisonment in the penitentiary.* *State v. Blackwell*, 459 S.W.2d 268, 272[3] (Mo. banc 1970). These statutory words of art mean, in pith, a *felony.* They convey the statutory intent that the Second Offender Act applies only where the prior conviction was for a felony. *State v. Kennedy*, 513 S.W.2d 697, 700[6] (Mo.App.1974). The information recites that earlier, the defendant had pleaded guilty to the offense of burglary in the second degree and was sentenced to a term of five years imprisonment with the Department of Corrections—a pleading valid to invoke the authority of the court to assess punishment under the statute.

The next point contends that there was not sufficient proof of possession by the defendant of the stolen goods, or other circumstances, to allow an inference that he had committed the burglary where the property was taken.

In the early morning [2:20 a. m.], Patrolman Burroughs of the Kansas City Police Department received a report of an abduction in the vicinity. The information was that a male had forced a female into a dark-colored car. He found no car of that description at the reported site, but his cruise of the area detected a dark car parked, headlights unilluminated, on the street about forty feet from a Shop-N-Go store. Officer Burroughs observed the car, still without lights, pull up to the stop sign at the intersection nearby. As the dark car turned, the lights from the police car shone on the occupants, three black males and another who appeared to be a female [later shown to be an impersonator] with long red hair. The officer followed and then stopped the dark car. He saw two trash bags in the back seat, each full of goods, some with price tags still intact. Inquiry of the dispatcher informed Burroughs of a recent report of burglary at the Shop-N-Go store where the dark car had been observed parked. There he saw that the front glass door had been shattered by bricks. The shelves where liquor and cigarettes were kept were empty.

Goode, an employee at the store, verified that the merchandise discovered in the trash bags on the back seat of the car—liquor, cigarettes, gloves, candy, calculators, among other things—belonged to the Shop-N-Go store. It was confirmed by employee Wilkes that the store had been locked at 1:00 a. m. that day and no one had been given permission to enter thereafter.

The driver of the dark car was Jerome Wright. Also in the front seat were one Stanley Porter [in female dress] and defendant Roberts. Fayodis Thomas occupied the back seat alongside the two trash bags with merchandise. Two of them, Porter and Thomas, were called for the defense to explain the presence of the stolen property in the car during the occupancy of the defendant. Their testimony was to the effect that neither the defendant nor any of them had knowledge of the burglary of the Shop-N-Go store or was in complicity in that unlawful entry.

Thomas testified that as he walked, he found two trash bags, filled with the whiskey, cigarettes and other goods, at 40th and Paseo, slung the bags over his shoulder and proceeded south where he saw Porter [in female garb] and the defendant seated in a car parked at 44th and Paseo, the site of the Shop-N-Go store. Thomas approached and asked defendant for a ride. He was told to wait until the driver returned from the service station; they had run out of gas and he had gone to replenish the supply. Thomas entered the car and occupied the rear along with the trash bags. In a matter of seconds, Wright returned with a gas can in hand, emptied the fuel into the tank, and placed the can somewhere in the car. Thomas testified he did not show the contents of the bags to any of the occupants, but that he did give Porter a packet of cigarettes out of the bag and offered whiskey for a ride home.

The testimony by Porter, with minor lapses, was corroborative of that given by Thomas. Porter denied complicity in the burglary or that of the defendant.

The rebuttal testimony for the prosecution showed—by Officer Burroughs—that Thomas had given two different accounts of the events. Thomas told Burroughs that he met the others by the store, but then told him that he and the three others had been riding around that morning and ran out of gas. Thomas told Burroughs also two different versions as to where he found the trash bags, 40th and Virginia and 40th and Paseo, variously. Burroughs testified on rebuttal also that the ground was wet that night, not dry as Thomas had testified, but that the bags were neither wet, torn, nor ruffled. Also, in rebuttal, a search of the dark car failed to disclose a gasoline can. As to the Porter evidence, Burroughs testified that his purse contained two half-pints of liquor and two packs of cigarettes. Technical evidence tended to rebut the contention of Thomas that he had no knowledge of the burglary nor entered those premises: there was proof for the prosecution that glass particles taken from the shoes of Fayodis Thomas matched samples of glass taken from the door of the Shop-N-Go store, both as to index, constituent elements, composition and color, and that no shattered fragments were found within the area between the store and where the dark car was parked.

The unexplained possession of goods stolen in a recent burglary suffices to infer guilt both as to the unlawful entry and the theft from those premises. *State v. McClinton*, 566 S.W.2d 506, 508[1, 2] (Mo. App.1978). To support guilt, the possession by an accused need not be separate from others but may be joint with them. *State v. Webb*, 432 S.W.2d 218, 222[5, 6] (Mo. 1968). A manual caption is not always essential to possession; rather, the nature of the possession is determined by the nature and kind of the property. *State v. Prunty*, 276 Mo. 359, 208 S.W. 91, 94[2] (1918). The inference of guilt to which unexplained *joint* possession gives rise, however, is one of fact and not of law and *alone* does not suffice to submit the guilt of the accused. *State v. Cobb*, 444 S.W.2d 408, 414[6] (Mo. banc 1969). Rather, something more than unexplained joint possession of recently sto-

len goods—some *affirmative participation* in the criminal venture—must be shown to convict for the burglary or theft. *State v. Arnold*, 566 S.W.2d 185, 186[1–3] (Mo. banc 1978); *State v. Farmer*, 490 S.W.2d 72, 74[1] (Mo.1973).

The evidence for the prosecution, taken most favorably to the verdict of guilt, shows the defendant in a car parked at the site of the burglary within eighty minutes of the crime. [The premises of the store were secured by an employee at 1:00 a. m. and the entry and theft were detected minutes after 2:20 a. m., when the dark car was first observed by police at the curb by the store.] The occupancy of the car was shared by Thomas, who admitted possession of the property [proved to be stolen] in the trash bags, and whose presence on the Shop-N-Go store premises after the breakage was shown by the combined proof of the compatible glass particles taken from his shoes and the absence of fragments on the area between the store premises and the place where the dark car was parked. However otherwise plausible the account given by Thomas how he came into possession of the bags and contents, his testimony was seriously impeached by the variable versions of that event recounted to Officer Burroughs. There was proof also that some of the property stolen from the store was taken from the person of the impersonator, Porter, another occupant of the car.

Evidence that the defendant was at the scene with opportunity to commit the crime, not in itself sufficient to submit guilt, may be considered with the joint possession of goods stolen during the crime, and other circumstances, to determine the inference of the affirmative participation of the defendant in the criminal enterprise. *State v. Cobb*, supra, l. c. 412[1, 2]. There is no circumstance, as in *Cobb*, of sudden acceleration and frantic movement from the burglary scene by the vehicle to escape the police chase from which, along with joint possession of the stolen goods, to allow inference of guilty participation by the defendant passenger. The dark vehicle which

defendant Roberts occupied left the curb slowly and moved [except for a momentary lapse of headlights] lawfully until stopped by the police. There is evidence, however, that Thomas, one of the occupants, had entered the Shop-N-Go store after the breakage and had pilfered from the shelves. There is evidence also, from the statement made by Thomas to Officer Burroughs, that Porter, defendant Roberts and Thomas had been riding together in the car all night. This evidence, taken as fact and conjointly with the presence in the car of the stolen goods and the inference that Thomas was on the store premises illicitly during the shared occupancy of the vehicle, shows a continuous collective enterprise among the occupants to commit the crime charged against the defendant Roberts.

The proof before us appears more cogent than in *Cobb* or in *Arnold* or in *McClinton* which sustained the submission of burglary and stealing on no more evidence than presence at the scene with opportunity to commit the crime in a motor vehicle shared with others in the course of transportation of the goods stolen from premises illegally entered. This evidence, the decisions hold, suffices to raise the inference of an exclusive, albeit joint, possession of the stolen goods in the defendant as well as the submissible issue of the affirmative participation by the defendant as an aider and abettor in the criminal activity. The evidence before us allows inference additionally that the occupants of the dark car were in the company of one another at the very time when one of them, Thomas, was on the premises of the store illegally and purloined the property.

The defendant argues the effect of *State v. Farmer*, supra, to support his contention of right to acquittal. That defendant was found senseless from drink in the rear seat alongside the property taken in a burglary in a car occupied by others. There was no evidence that the defendant had been in the car at the time of the crime or had any connection with the other two occupants. In a word, there was no basis for inference that the defendant had opportunity to commit the entry or take the property unlaw-

fully. The defendant Roberts, on the other hand, was an aware participant in the continuum of the criminal events as they unfolded.

The judgment is affirmed.

All concur.