**STATE of Missouri,**
**Plaintiff–Respondent,**

v.

**Paul Bernard HEINZ,**
**Defendant–Appellant.**

No. 41543.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 5, 1980.

Charles E. Bridges, Asst. Pros. Atty., St. Charles, Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for plaintiff–respondent.

Judith B. Sklar, St. Charles, for defendant–appellant.

SIMON, Judge.

Paul Bernard Heinz (defendant) was found guilty by a jury and convicted of Burglary Second Degree and Stealing, §§ 560.070 and 560.156 RSMo. 1969. The trial court found that he was subject to the Second Offender Act provisions, § 556.280 RSMo. 1969, and sentenced him to eight years for Burglary Second Degree and three years for Stealing, the sentences to run concurrently. After his timely motion for new trial was overruled and judgment entered, he appealed. We affirm.

Defendant contends that the trial court erred (1) in sustaining the state's objection to the defense counsel's inquiry of defendant's employment status, (2) in overruling defendant's objections to portions of the prosecutor's closing argument and (3) in failing to sustain his motion for acquittal at

the close of the state's evidence and at the close of all the evidence.

The evidence showed that at approximately 10:00 p.m. on April 16, 1978, Deputy Sheriff Daniel Sauer was dispatched to Pioneer Drug Store in St. Charles County, in response to a burglar alarm. Upon his arrival, the deputy found that a window had been broken on the side of the building. He put in a call for assistance. Officer Russell arrived promptly, at which time Deputy Sauer instructed him to secure the front entrance while he went to secure the rear entrance of the store. Deputy Sauer checked the rear entrance to the drug store and found that it was closed and locked. He then stood back, watched the door and waited. After about five to ten minutes, Deputy Sauer heard the rear door open and observed two shadows in the doorway of the drug store. Deputy Sauer identified himself as a police officer and the individuals requested him not to shoot. He then approached the individuals and instructed them to come out into the light. He placed the two individuals under arrest and gave them their *Miranda* warnings. At trial Deputy Sauer identified the defendant as one of those individuals. Kolby Kristiansen was the other individual.

Deputy Sauer testified that he heard something drop at the time he first observed the two shadows in the doorway and later ascertained that it was a hammer and a flashlight. The hammer was identified by Barry Kidder, the owner of the drug store, as property which belonged to him and which had been kept in the store.

Deputy Russell also identified the defendant as one of the individuals taken into custody by Deputy Sauer that evening. Each of the deputies testified that the defendant was wearing gloves and Kristiansen had socks pulled over his hands at the time they were arrested.

Lieutenant Shrum, also a deputy sheriff of St. Charles County, testified that he arrived at the Pioneer Drug Store on the evening of the burglary shortly after 10:00 p.m. He took his two German Shepherd dogs into the building to conduct a search of the premises and found no one inside. He did find, however, a duffle bag about half filled with merchandise lying on the floor. That same evening Peggy Massey, Detective for St. Charles County, removed and photographed the items from the duffle bag in the presence of the store owner. Mr. Kidder testified that the duffle bag was not his property and that it was not in the store when he closed earlier that day. The items in the bag consisted of a roll of change, some batteries, a box of enamel paints, a selection of drugs and hypodermic syringes. Mr. Kidder testified that he was the owner of all items found in the duffle bag and that they were kept in the drug store, either on the open shelves or in a locked drawer. It was also his testimony that when he closed the store at 3:00 p.m. on the day of the burglary, there were no broken windows, a drawer which contained some of the merchandise found in the duffle bag was locked, the alarm was set, and no one was given permission to enter the store or take any merchandise therefrom.

Defendant and Kristiansen were taken to the St. Charles County Sheriff's Department by Detectives Ken Brockel and Ron Sims. It was Detective Brockel's testimony that when they arrived at the Sheriff's Department he read the defendant his *Miranda* rights in the presence of Detective Sims. Defendant indicated that he understood each of his rights and that he wished to waive them. He also signed his name at the bottom of the waiver. Detective Brockel then asked him what occurred at the pharmacy. In the presence of both Detectives Brockel and Sims, the defendant stated that David Stahlschmidt and Ron Seider broke the window at the pharmacy and that they waited approximately one hour to see if an alarm or bell would sound. Stahlschmidt and Seider were supposed to wait outside, one armed with a shotgun, the other with a rifle. If any police cars were to come to the scene, the two subjects were to open fire on the officers. Detective Brockel further testified that the defendant told him that he and Kristiansen entered the pharmacy because they were more knowl-

edgeable about narcotics. Defendant refused to put anything in writing. At trial, Detective Sims substantiated the testimony of Detective Brockel.

Defendant chose to testify in his own behalf. It was his testimony that on the evening of April 16, 1978, he was with some friends playing cards. He said that he left his friends' house at around 9:30 p.m. to buy some milk at the Majik Market. After entering the store he found that he did not have enough money to buy milk so he went home. On his way home he decided to take a short–cut which passed by the rear of the Pioneer Drug Store. He noticed someone standing near the rear entrance of the drug store, and recognized the person as an acquaintance. Soon thereafter, some police officers approached them and ordered them to lie down on the ground. Defendant denied entering the drug store and breaking the window. He admitted being interrogated by Detective Brockel and reading and signing a waiver of rights form, but denied making a statement that he was involved in the burglary.

Defendant's first contention is that the court erred in sustaining the state's objection to defense counsel's inquiry of defendant's employment status. The court sustained the objection on the ground that the line of inquiry was irrelevant. Defendant maintains that he was prejudiced in that he was not permitted to establish that he was a law abiding, gainfully employed citizen. He argues that the evidence was admissible to show his good character.

■ The court's ruling which defendant's complaint is directed, occurred on direct examination of the defendant and within the following context:

"Q. Are you employed? A. Yes.

MR. BRIDGES: I object to that as irrelevant.

THE COURT: Sustained.

MS. SKLAR: May we approach the bench?

(The following proceedings were had between court and counsel out of the hearing of the jury.)

MS. SKLAR: I believe I should be able to ask him if he is employed.

THE COURT: Sustained."

As can be observed from the record, defense counsel made no offer of proof whereby the trial court and opposing counsel could ascertain the purpose of the proffered testimony and the reason for its alleged admissibility. This issue, therefore, was not properly preserved for appeal. *State v. Harlston*, 565 S.W.2d 773, 783 (Mo.App.1978). However, we shall consider this issue under the authority of Rule 27.20(c), which allows for review of plain errors affecting substantial rights when a point has not been properly preserved for appeal.

■ It is within the discretion of the trial judge to determine whether evidence sought to be introduced is relevant. The relevancy of evidence depends on whether the evidence sought to be introduced tends to prove or disprove a fact in issue or to corroborate evidence which is relevant and bears on the principal issue. Absent clear abuse of discretion an appellate court will not interfere with the trial court's ruling on the admission or exclusion of evidence. *State v. Harlston, supra* at 782. An accused may produce evidence of his good character as substantive evidence of his innocence, but evidence of good character of the defendant must be confined to proof of character or reputation at or prior to the commission of the offense. *State v. Jackson*, 373 S.W.2d 4, 8 (Mo.1963). However, the nature of the proof offered should be restricted to the traits of character involved in the crime on trial. *State v. Quinn*, 344 Mo. 1072, 130 S.W.2d 511, 515 (1939).

■ Defendant was being tried for the burglary of a drug store and stealing, among other things, drugs and hypodermic syringes. While evidence of defendant's reputation in the community as an honest, law abiding citizen would have been relevant character traits of the offenses charged, see *State v. Quinn, supra*, defendant did not offer such evidence. We do not agree with defendant's assertion that the fact of employment is evidence that he is law abiding. Also the question did not re-

late to defendant's employment at the time of or prior to the commission of the offense. Nor do we believe, given the nature of the charges, that evidence of defendant's present employment status would tend to prove or disprove a material fact in issue. We rule against the defendant on his first point.

Defendant next contends that the trial court erred in three separate instances in overruling defendant's objections to statements made by the prosecutor in his closing argument. As a general rule, the trial court has broad discretion in determining the propriety of oral argument and appellate courts will not interfere in absence of a clear abuse thereof. As long as the prosecutor stays within the confines of the evidence and reasonable inferences therefrom, the argument is legitimate. *State v. Nichelson*, 546 S.W.2d 539, 543 (Mo. App.1977). Defendant places the three statements out of the context in which they were made, citing isolated phrases, and contends, that they were misstatements of the law and were contrary to the instructions on culpability. The first statement objected to was made near the beginning of the state's closing argument wherein the prosecutor stated: ". . . you must find first that the defendant, Paul Heinz or one or more others—this, again, is the important thing in law that says you don't have to find that Paul Heinz did it, but one or more others acting together—or one or more others, broke into the Pioneer Drug Store and entered therein." After the defense counsel's objection to this argument was made and denied, the prosecutor went on to make the following comment: "Second, you have to find that either he or one of his friends broke and entered and second that they did so with the intent to steal the property therein." The third remark cited by defendant as a misstatement of the law was stated accordingly: "The court tells you that the defendant Paul Heinz or one or more others—either him or Kolby Kristiansen inside there—stole United States coins . . ."

It is defendant's argument that the cumulative effect of these remarks was to mislead the jury by giving them the impression that they could find defendant guilty of the offenses charged, merely by believing that some other person or persons committed the offenses, regardless of their belief as to whether defendant participated in the offenses. He also contends that Instruction No. 12 added to the prejudicial impact of the prosecutor's remarks. That instruction provided, in part, that the arguments of the attorneys "are intended to help you in understanding the evidence and applying the law, . . ."

In determining whether a trial court has abused its discretion with regard to the prejudicial effect of the prosecutor's remarks in closing argument, it is incumbent upon our court not to consider solely the isolated words or phrases of the state's argument, but rather, to consider such statements in the context of the court's instructions, and the defense argument as a whole. *State v. Conger*, 540 S.W.2d 169, 170 (Mo.App.1976). When viewed in this manner the statements made by the prosecutor did not produce the prejudicial results claimed by the defendant.

At the beginning of trial the court read Instruction No. 1 to the jury which contained the following: "It is the court's duty to enforce those rules (of court) and to instruct you upon the law applicable to the case. It is your duty to follow the law as the court gives it to you." Instruction No. 5 and Instruction No. 6, the verdict directing instructions on Burglary and Stealing respectively, each mandated that the jury "find and believe from the evidence beyond reasonable doubt . . . that the defendant, Paul Bernard Heinz acted either alone or knowingly and with common purpose together with one or more others in the conduct referred to in the above paragraphs, . . .," before they could find defendant guilty of the respective offenses. More importantly, the court gave the jury Instruction No. 7 which provided:

"All persons are guilty who knowingly act together with the common purpose of committing an offense, or who knowingly

and intentionally aid or encourage another in committing it, and whatever one does in furtherance of the offense is the act of each of them.

The presence of a person at or near the scene of an offense at the time it was committed is not alone sufficient to make him responsible therefor, although his presence may be considered together with all the evidence in determining his guilt or innocence."

In addition, the prosecutor highlighted Instruction No. 7 at the outset of his closing argument by reading it verbatim to the jury just prior to making the first of the alleged improper statements.

Counsel for the defense, in his argument, again reminded the jury that they "cannot find him guilty just because he knew the person who committed the act," and that they "must find that Paul Heinz either by himself or with another committed this crime."

Examining the comments complained of in their proper context, and viewed in light of the instructions and the argument of the defense counsel, the jury could not have been misled as to the applicable law on defendant's culpability.

Defendant's third allegation of error is that the trial court erred in overruling the defendant's objections to the prosecutor's repeated comments on the defendant's failure to call other witnesses or introduce evidence to corroborate his testimony. Defendant argues that such comments were improper in view of defendant's presumption of innocence and his right to remain silent and that the statements, taken together, had a prejudicial impact by leading the jury to believe that the defendant had to present evidence to prove his innocence. We find no merit in this argument.

Article 1, § 19 of the Missouri Constitution provides, in part, "That no person shall be compelled to testify against himself in a criminal cause, . . ." This language prohibits comment on the defendant's failure to testify and also comments which have the effect of compelling defendant to testify. *State v. Lindsey*, 578 S.W.2d 903 (Mo.banc 1979).

Defendant relies on *State v. Lindsey, supra*, to support his contentions. The *Lindsey* case dealt with the propriety of a statement made by a prosecutor during voir dire that the defendant did not have to present any evidence or take the stand if he did not want to. Defendant later took the stand and testified in his own behalf. Our Supreme Court reversed the conviction and remanded for a new trial on the ground that the statement was of such a character that the jury would naturally be influenced so as to deny the defendant a fair trial. It was the court's belief that the statement had the effect of challenging the jury to observe whether or not the defendant would take the stand "under the goad of the prosecutor's statement."

However, that situation is not before us. Here the comments were made in closing argument after the defendant had testified. They therefore cannot be considered a comment on the defendant's failure to testify or comments which had the effect of inducing the defendant to testify.

Defendant also argues that the rule, applied in *State v. Snyder*, 182 Mo. 462, 82 S.W. 12 (1904), that where the defendant is the only person who could or would have contradicted the evidence offered by the prosecution, a statement that evidence is uncontradicted is held to be an improper statement referring to the defendant's failure to testify. Defendant's reliance on this case is misplaced for two reasons. Here the defendant did testify, and also the defendant's contention that there were no available witnesses who could substantiate his testimony and contradict the evidence offered by the prosecution is not supported by the record. We find this point against the defendant.

Defendant's next point concerns two statements made by the prosecutor during closing argument, one of which defendant regards as improper impeachment of his credibility; the other, defendant charges, is a highly prejudicial remark regarding his prior conviction. The first of these state-

ments was made by the prosecutor while commenting on the credibility of the witnesses. The relevant portion reads as follows: "Do you really expect Mr. Heinz to get up there and say ladies and gentlemen, I broke in there with the help of my friends. I did all these things. Please find me guilty so I can go to prison. Do you really expect him to do that? He had one choice: get up there and lie or he is going to prison. MS. SKLAR: I object. This is improper impeachment regarding his guilt in this charge. THE COURT: Overruled." Defendant contends that the trial court erred in overruling this objection. We do not agree.

When arguing to the jury a prosecutor has the right to comment on the credibility of the defense witnesses and, when a defendant offers himself as a witness in his own behalf, his testimony is subject to the same arguments on the issue of credibility as any other witness. *State v. Henderson*, 530 S.W.2d 382, 384 (Mo.App. 1975). The comment was simply a comment on the defendant's credibility. The defendant had the most to gain if the jury accepted his testimony. Viewed in this context, we cannot say that the prosecutor exceeded the bounds of propriety.

The other statement was made by the prosecutor during final argument appeared within the following context:

"Look at the instruction. It tells you if you find that he has been convicted of an offense, you can use that in determining whether or not he is telling the truth. Why do you think you are given that instruction? It's telling you 'consider that.' Consider a man who has been convicted of this whether or not he is telling the truth. You said you would follow the instructions and now you have heard this instruction. You have heard the testimony. You saw each witness. Follow the law, follow the instructions and that's all I ask you. And based upon that, you have to determine who is telling the truth. That shouldn't be a problem. *If you believe Paul Heinz's story, no criminal is ever going to be convicted.*" (emphasis ours)

Defendant did not object to this statement at the time it was made, but now complains that it constitutes an improper use of defendant's prior conviction in that it was an attempt to establish defendant's propensity for criminal conduct. He also argues that it goes beyond the bounds of a permissible comment on the necessity of law enforcement. We find no merit in these arguments.

Objections to improper arguments must be made at the time of the argument and come too late if made after the jury has retired or if raised for the first time in a motion for new trial. *State v. Hatten*, 561 S.W.2d 706, 713 (Mo.App.1978). Since the statement was not objected to at the time made, nothing was preserved for review. However, we shall review this point under the authority of Rule 27.20(c). In so reviewing we find that reversible error was not committed and no manifest injustice has resulted. Placed in its proper context, we find that the argument in question went solely to the issue of defendant's credibility and was not an attempt to argue the prior conviction as substantive evidence of defendant's guilt. See e. g. *State v. Coleman*, 524 S.W.2d 27 (Mo.App.1975). Secondly, we hold that the prosecutor did not go beyond the bounds of permissive argument since it is proper for a prosecutor to convey to the jury the necessity of law enforcement as a deterrent to others. *State v. Steward*, 564 S.W.2d 95, 99[5] (Mo. App.1978). We do not construe the prosecutor's remarks as an attempt to go beyond this. Defendant relies mainly on *State v. Mobley*, 369 S.W.2d 576 (Mo.1963) to support his point. However his reliance is misplaced. In *Mobley* the prosecutor argued repeatedly and persistently the defendant's individual character and criminal proclivities, as shown by his past offenses, and the necessity of deterring the defendant, not as an example to others, but to prevent further injury to society by him. The record does not reflect such remarks here. The other cases relied on by the defendant are also inappropriate since all involved situa-

tions where the prosecutor improperly personalized the defendant with the jury. See *State v. Raspberry*, 452 S.W.2d 169 (Mo. 1970); *State v. Nickens*, 403 S.W.2d 582 (Mo. banc 1966); *State v. Tiedt*, 357 Mo. 115, 206 S.W.2d 524 (banc 1947); *State v. Heinrich*, 492 S.W.2d 109 (Mo.App.1973). In those cases the prosecutor sought by inflammatory appeals to arouse in the jurors a personal hostility toward the defendant by speculating as to his future conduct, and implant in the jurors a fear that acquittal of defendant will endanger their own safety or safety of their family. That situation is not present here. We rule this point against the defendant.

Defendant's final contention is that the trial court erred in denying his motion for judgment of acquittal at the close of the state's case and at the close of all the evidence in that the state had failed to establish that the defendant had affirmatively participated in the offenses charged. In so arguing, defendant relies solely on his own testimony and cites authority for the proposition that proof of mere presence at the scene of the crime is insufficient alone to sustain a conviction. His ultimate position is that the state's case was purely circumstantial and does not meet the standards of circumstantial proof.

We do not agree with the defendant's interpretation of the evidence. First, the verdict in this case did not turn solely upon circumstantial evidence. The state offered evidence of the defendant's own admission of his complicity in the offenses charged. Detectives Brockel and Sims each testified that the defendant admitted to them that he had entered the building because he knew more about drugs than his accomplices. This admission constitutes direct evidence of his participation in the offenses charged. *State v. Bartley*, 501 S.W.2d 519, 521 (Mo.App.1973). Secondly, in passing upon the sufficiency of the evidence, we consider as true all the evidence favorable to the state's case, both direct and circumstantial, including all reasonable inferences therefrom, while disregarding all contrary evidence and its inferences. *State v. Wilhite*, 587 S.W.2d 321, 324 (Mo.App.1979). When so viewed, we find that there was substantial evidence to support the verdict. Defendant's point is not well taken.

The judgment is affirmed.

SMITH, P. J., and SATZ, J., concur.