**STATE of Missouri,
Plaintiff-Respondent,**

v.

**David W. KELLEY and Alan L. Sarnes,
Defendants-Appellants.**

Nos. 13394, 13395.

Missouri Court of Appeals,
Southern District,
Division Two.

June 20, 1984.

Motions for Rehearing or Transfer Denied
July 5, 1984.

Application to Transfer Denied
Sept. 11, 1984.

Donald L. Catlett, Asst. Public Defender, Rolla, for defendants-appellants.

John Ashcroft, Atty. Gen., Carrie Francke, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

MAUS, Presiding Judge.

Donald W. Kelley and Alan Lee Sarnes were jointly charged with burglary in the second degree (§ 569.170) and stealing property of a value of at least $150 (§ 570.030). The jury found each guilty of each offense. In the manner prescribed by § 557.036.2(1), each defendant had requested the court to fix the sentence. Each defendant was sentenced to concurrent terms of three years. Each separately appealed. However, the first three points of Kelley and the three points of Sarnes are identical. Only Kelley has a fourth point. Except for that fourth point, their briefs are likewise identical. The appeals have been consolidated.

Considering the evidence favorably to the state as mandated by the verdict, *State v. Dodson*, 641 S.W.2d 115 (Mo.App.1982), the following is a succinct summary of the facts. On Thanksgiving Day, November 25, 1982, an apartment complex was under construction in Waynesville. At the close of work on the preceding day, several rolls of copper wire were placed in a completed apartment. Certain tools were locked in a shed. A heavy air compressor was left outside on the premises. On Thanksgiving Day, a police officer checked the property at approximately 4:30 p.m. All was in order at that time.

At approximately 7:45 p.m., a highway patrolman stopped an automobile on the Highway H entrance ramp to I–44. This ramp is near Waynesville. The automobile bore no license plate. It was driven by Sarnes. Kelley was a passenger in the front seat. Upon investigation, several rolls of copper wire, various tools, a transit and an air compressor were found in the back seat and the trunk of the automobile. These items had been taken from the construction site. When arrested, Kelley had a screwdriver in his back pocket.

Sarnes offered an explanation for the presence of the stolen property. Sarnes lived at Laquey, which the record infers is in the vicinity of Waynesville. He said that on Thanksgiving Day about 1:00 p.m., his friend Kelley came to his house. About 1:30 p.m., the two of them started driving toward the Lake of the Ozarks. They both had been drinking and continued to drink. They eventually stopped at a bar near Iberia. There he encountered an individual, whose name he could not remember, driving a pickup truck. He bought the stolen property from this individual for $155. Because of the low price, he had "a good idea" that it had been stolen, "you know, you just don't buy something that cheap." He planned to sell the stolen property through his father's flea market.

Sarnes said that Kelley passed out early in the trip and had no part in the purchase. At the time he was stopped, Sarnes was taking Kelley to Kelley's home near Saint Roberts. Kelley confirmed the fact he was "passed out" during substantially all of the trip. For this reason Kelley was unable to tell the patrolman where he had been 10 minutes before they were stopped.

In dealing with a change of venue, Rule 32.03(c) provides: "If a timely application is filed, the court shall order the case transferred to some other county convenient to the parties, first giving all parties an opportunity to make suggestions as to where the case should be sent." The information was filed in Pulaski County. On March 15, 1983, a joint application for a change of venue was filed. On March 25, 1983, an order was entered sending the case to Texas County. By their first point, the appellants seek reversal because they had no opportunity to make suggestions concerning where the case should be set.

Because the rule in no way limits the court to acting within the scope of any suggestions made, it is scarcely logical that a failure to afford that opportunity constitutes reversible error. However, that issue need not be reached for two reasons. First, other than an unsubstantiated statement in the briefs, the defendants have presented no factual basis for the point. *State v. Silinzy*, 621 S.W.2d 114 (Mo.App. 1981); *State v. McClain*, 602 S.W.2d 458 (Mo.App.1980). Second, the defendants went to trial in Texas County with no objection to venue. They each sought a directed

verdict. They first attempted to raise the point in their motions for new trials. This was too late. *State v. White*, 654 S.W.2d 288 (Mo.App.1983); *State v. Rollie*, 585 S.W.2d 78 (Mo.App.1979). The point is denied.

■ An expert technician of the Highway Patrol State Crime Laboratory described the method by which he compared mud from the scene and the boots of Kelley and the shoes of Sarnes. He observed that the mud contained minute quantities of a few different types of mineral and stone. He found the mud samples similar in their characteristics, their content, their color and mesh size. Contrary to the defendants' contention, this evidence of the comparison of mud samples was properly the subject of expert testimony. Annot., Evidence—Probabilities—Criminal Case, 36 A.L.R.3d 1194 (1971). The defendants also contend the expertise of the technician was not established. The technician had a B.S. degree in chemistry. Their attack upon his qualifications is based upon his lack of academic training in soil comparison. However, it is well established that one may qualify as an expert through practical training as well as through academic study. *State v. Neal*, 624 S.W.2d 182 (Mo.App. 1981). There was evidence the technician had ample practical training in soil comparison. His expertise was properly established. *State v. Rhone*, 555 S.W.2d 839 (Mo. banc 1977).

■ The defendants next contend the trial court committed reversible error in refusing to admit in evidence payroll check stubs of Sarnes. The tendered stubs indicated Sarnes had been employed during the period of the burglary. The defendants made no offer of proof to establish the admissibility of that evidence of questionable relevancy. For that reason alone, the defendants' point could be denied. *State v. Whiteaker*, 499 S.W.2d 412 (Mo.1973), cert. denied 415 U.S. 949, 94 S.Ct. 1472, 39 L.Ed.2d 565 (1974); *State v. Heinz*, 607 S.W.2d 873 (Mo.App.1980).

By their briefs, the defendants contend the stubs were admissible to establish that Sarnes had no motive to steal and had $155 with which to purchase the stolen property. For the purpose of this point, it may be assumed that evidence Sarnes earned substantial wages was relevant in that respect. *State v. Harrison*, 539 S.W.2d 119 (Mo. App.1976); *State v. Talbert*, 524 S.W.2d 58 (Mo.App.1975). But see *State v. Heinz*, supra.

However, the tendered evidence deals with a collateral issue. Sarnes had testified that at the time in question he was employed as an over-the-road truck driver. There must be limitations upon the trial of collateral issues. The following are expressions of that necessity.

The sole fact that evidence is logically relevant does not require its admission; the evidence must also have some probative force over and above logical relevancy, which has been referred to as 'legal relevancy' or 'materiality'. Practical considerations do not permit the court to hear every matter that may be in any degree logically relevant to the issue, but require that matters received as evidence shall have a higher degree of probative force. 29 Am.Jur.2d Evidence § 253 (1967).

"But if evidence pertaining to collateral matters, otherwise relevant, brings into a case new controversial matters which would result in confusion of issues, constitute unfair surprise, or cause prejudice wholly disproportionate to the value and usefulness of the offered evidence, it should be excluded." 29 Am.Jur.2d Evidence § 252 (1967). Also see *State v. Crane*, 559 S.W.2d 294 (Mo.App.1977). "Otherwise relevant evidence might be properly excluded because it is unduly remote or because it tends to confuse rather than enlighten the jury." *Cotton v. United States*, 361 F.2d 673, 676 (8th Cir.1966).

■ Full development of this collateral issue could have produced inquiries concerning the defendant's income tax returns, financial net worth, family obligations, personal spending habits, etc. In determining the admissibility of such evidence, the trial court is necessarily vested with broad dis-

cretion. *State v. Clark*, 652 S.W.2d 123 (Mo.1983). "The offered evidence, at best, was certainly remote and it could have well confused the jury as to the ultimate issue. Under these circumstances the trial court's action in closing the door to this inquiry was well within its broad discretionary powers." *Cotton v. United States*, supra, at 676. This point is without merit.

By his fourth point, Kelley alone attacks the sufficiency of the evidence. He contends there is only evidence to place him in the automobile in an intoxicated condition. He argues there is no evidence to show his participation in the burglary and stealing. He cites cases such as *State v. Farmer*, 490 S.W.2d 72 (Mo.1973); *State v. Mott*, 631 S.W.2d 56 (Mo.App.1982).

■ Those cases are factually distinguishable. The applicable rule has been well stated. "The unexplained possession of goods stolen in a recent burglary creates an inference of guilt both as to the burglary and the theft, ... but if the possession is not exclusive but is joint with another person, there must be some evidence of defendant's guilt in addition to the inference raised by the joint possession." *State v. Leach*, 633 S.W.2d 754, 756 (Mo.App. 1982) (citation omitted).

■ In this case, it is significant the appellants were apprehended in the vicinity of the offense, on the most direct route from the scene to I–44, and within a short time after its commission. *State v. Pickett*, 642 S.W.2d 703 (Mo.App.1982); *State v. Leach*, supra; *State v. Roberts*, 579 S.W.2d 685 (Mo.App.1979). Kelley had no identification. He did have a screwdriver in his pocket. Even though that screwdriver could not be positively matched with marks on the hasp pried from the shed door, there was evidence it could have been so used. His possession of the screwdriver was admissible and significant. *State v. Blockton*, 556 S.W.2d 954 (Mo.App.1977). The same is true of the fact it would have taken two men to lift the air compressor into the trunk of the automobile. Even though it was not absolute proof, the mud on Kelley's boots linked him with the scene of the offense. *State v. Ross*, 507 S.W.2d 348 (Mo.1974); *State v. Roberts*, supra. This evidence is emphasized by the fact Sarnes stated there was similar road mud on the exit ramp rather than gravel, as established by testimony of the highway patrolman. Kelley claimed, as a result of intoxication, he had no memory of the trip, even 10 minutes prior to his apprehension. The patrolman testified defendant Kelley had been drinking but was not intoxicated. The jury could have found Kelley's explanation false and evidence of his guilt. *State v. Pickett*, supra. There was ample evidence to establish the charge of burglary and stealing and Kelley's participation in those offenses. *State v. Arnold*, 566 S.W.2d 185 (Mo. banc 1978); *State v. Roberts*, supra. The judgments are affirmed.

HOGAN and PREWITT, JJ., concur.